1999 UT 74

**Jane DOE, Plaintiff and Appellant,**

v.

**Leigh A. MARET, John Helfer, and Psychiatric Associates, Inc., Defendants and Appellees.**

No. 970254.

Supreme Court of Utah.

Aug. 13, 1999.

---

Michael L. Schwab, Lloyd A. Hardcastle, Farmington, for plaintiff.

David G. Williams, Terrence L. Rooney, Salt Lake City, for defendants.

DURHAM, Associate Chief Justice:

¶ 1  This case comes to us on interlocutory appeal.  The district court granted appellee Leigh A. Maret's motion to compel the deposition testimony of appellant Jane Doe's counsel from a prior case involving a divorce and custody dispute ("prior counsel").  The sole issue for review is whether appellant waived the attorney-client privilege with regard to communications with her prior counsel.  We affirm but modify the district court's ruling.

## BACKGROUND

¶ 2  In this medical malpractice case, Doe claimed that defendants wrongfully provided her psychological records to her ex-husband's attorney in the divorce and custody proceeding.  The psychological records were highly personal and confidential.  Ultimately, Doe voluntarily gave up custody of her children and claims in this case that she decided to relinquish custody of her children because her ex-husband threatened to tell the children about the information contained in the records.  Appellee Maret is the only defendant remaining in the suit.

¶ 3  In the court below, Maret filed a motion to compel the testimony of the attorneys who assisted plaintiff in the custody dispute.  Maret argued that the Doe had waived the attorney-client privilege protecting communications with her prior counsel by placing her motivation for relinquishing custody at issue in this case.  Maret also argued that Doe waived the privilege by providing voluntary deposition testimony concerning her communications with prior counsel.

¶ 4  The district court granted Maret's motion to compel, citing Rule 504 of the Utah Rules of Evidence as authority.  However, the district court failed to identify the specif-

ic provision of Rule 504 justifying its finding of waiver.  At one point in the hearing, the district judge offered some insight into his reasoning by stating:

> And I don't understand how it can be now that she hasn't waived the privilege by filing this, by the nature of this lawsuit.  For instance, if the lawyer were to testify that she didn't relinquish custody on the basis of this released information, that she did it on whatever other basis, then that would be very credible and important information.

■ ¶ 5  Maret correctly notes that this court will uphold a district court's ruling of law on any ground made available to the court below, whether expressly relied upon or not.  *See Higgins v. Salt Lake County,* 855 P.2d 231, 235 (Utah 1993).  In reliance upon this principle, Maret argues that the district court's ruling can also be upheld on the ground that Doe waived the privilege in her deposition testimony under Rule 507 of the Utah Rules of Evidence.

■ ¶ 6  We review the district court's conclusions of law for correctness.  *See Jacobsen Inv. Co. v. State Tax Comm'n,* 839 P.2d 789, 790 (Utah 1992).

## ANALYSIS

■ ¶ 7  The attorney-client privilege "is intended to encourage candor between attorney and client and promote the best possible representation of the client."  *Gold Standard, Inc. v. American Barrick Resources (USA), Inc.,* 801 P.2d 909, 911 (Utah 1990).  It is the oldest of the common law privileges protecting confidential communications.  *See Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (citing Wigmore, *Evidence in Trials at Common Law* § 2290, Utah Code Ann. at 542 (McNaughten 1961)).  The privilege is recognized in Rule 504 of the Utah Rules of Evidence [1] as well as by statute at § 78–24–8(2)

---

1. Rule 504 reads as follows:
   (a) Definitions. As used in this rule:
   (1) A "client" is a person, including a public officer, or corporation, association or other orga-

nization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services.

(1996).[2] Although the legislature and courts have carefully guarded the integrity of the privilege, we have long held that it can be waived by a client. *See In re Young's Estate*, 33 Utah 382, 385, 94 P. 731, 732 (Utah 1908).

¶ 8 We first consider whether Doe waived the attorney-client privilege under Rule 504. In accordance with long-standing principles of common law, Rule 504 affords a client a privilege protecting confidential attorney-client communications subject to five exceptions. Specifically, the rule does not recognize a privilege when (1) the legal services were sought in furtherance of a crime or fraud, (2) the client has died and the lawyer-client communications are relevant to an issue between parties making claims through the deceased client, (3) the lawyer and client

(2) A "lawyer" is a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation.

(3) A "representative of the lawyer" is one employed to assist the lawyer in a rendition of professional legal services.

(4) A "representative of the client" is one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client, or one specifically authorized to communicate with the lawyer concerning a legal matter.

(5) A "communication" includes advice given by the lawyer in the course of representing the client and includes disclosures of the client and the client's representatives to the lawyer or the lawyer's representative incidental to the professional relationship.

(6) A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

(b) General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client between the client and the client's representatives, lawyers, lawyer's representatives, and lawyers representing others in matters of common interest, and among the client's representatives, lawyers, lawyer's representatives, and lawyers representing others in matters of common interest, in any combination.

(c) Who may claim the privilege. The privilege may be claimed by the client, the client's guardian or conservator, the personal representative of a deceased client, or the successor, trustee, or similar representative of a corporation, association, or other organization, whether or not in existence. The person who was the

are themselves in dispute regarding an issue of breach of duty, (4) the communication is relevant to a document to which the lawyer was an attesting witness, or (5) a dispute arises between joint clients of the lawyer. None of these exceptions apply here.

¶ 9 A party may also waive the privilege by placing attorney-client communications at the heart of a case, as where a party raises the defense of good faith reliance on advice of counsel. *See, e.g., Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162–63 (9th Cir.1992) (holding that party's claim that tax position was reasonable because based on advise of counsel, waived the privilege); *Conkling v. Turner*, 883 F.2d 431, 434–35 (5th Cir.1989) (holding that when plaintiff alleged

lawyer at the time of the communication is presumed to have authority to claim the privilege on behalf of the client.

(d) Exceptions. No privilege exists under this rule:

(1) Furtherance of crime or fraud. If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud; or

(2) Claimants through same deceased client. As to a communication relevant to an issue between parties who claim through the same deceased client, regardless of whether the claims are by testate or intestate succession or by inter vivos transaction; or

(3) Breach of duty by lawyer or client. As to a communication relevant to an issue of breach of duty by the lawyer to the client or by the client to the lawyer; or

(4) Document attested by lawyer. As to a communication relevant to an issue concerning a document to which the lawyer is an attesting witness; or

(5) Joint clients. As to a communication relevant to a matter of common interest between two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between any of the clients.

2. Section 78–24–8(2) of the Code provides:

An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given regarding the communication in the course of his professional employment. An attorney's secretary, stenographer, or clerk cannot be examined, without the consent of his employer, concerning any fact, the knowledge of which has been acquired in his capacity as an employee.

that fraud claim was not time-barred because he was unaware of fraud until informed of it by his attorneys, plaintiff waived privilege under federal rules); *Multiform Dessicants, Inc. v. Stanhope Prods., Co., Inc.*, 930 F.Supp. 45, 48–49 (W.D.N.Y.1996) (holding that where attorney in patent infringement was to testify as expert witness, plaintiff waived privilege as to communications pertaining to patent prosecution); *United States v. Bernard*, 877 F.2d 1463, 1465 (10th Cir. 1989) (holding banker waived privilege when he told victim he had checked legality of proposed loan with attorney). Such is not the case here. Whether Doe chose to relinquish custody of her children in order to avoid further dissemination of the contents of her psychological records is a core issue in this case; whether she discussed this with her attorney is not.

¶ 10 Contrary to the district court's apparent reasoning, the fact that a lawyer may have credible and important information gained through communication with a client does not itself justify the setting aside of the privilege (even when the lawyer is the only non-party who may have that information). In many cases a lawyer may have information gained through client communications that would be of great utility to an opposing party in the same or later litigation. Allowing an opposing party to depose that attorney in such cases merely because that evidence would be important and credible would eviscerate the privilege. The same rationale could be used to justify deposing a cleric in whom Doe had confided simply because the cleric might have relevant information about Doe's motivations. Such a practice would not advance the purposes of the privilege as it would not " 'encourage clients to make full disclosure to their attorneys.' " *Gold Standard*, 801 P.2d at 911 (quoting *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). Accordingly, we hold that Doe did not waive the attorney-client privilege under Rule 504 merely by bringing a suit where her decision to relinquish custody is at issue.

¶ 11 Maret also argues that Doe's communications with her prior counsel cannot be considered "confidential" under Rule 504 be-

cause she has discussed the details of those conversations in her deposition. However, Rule 504 does not address the issue of waiver. Rule 504 is only concerned with defining whether a communication is privileged at the time it is made. There is no dispute that Doe's communications with her prior counsel were intended to be confidential at the time they were made. Whether Doe subsequently waived the privilege is a question properly considered under Utah Rule of Evidence 507.

¶ 12 Rule 507(a) provides:

A person upon whom these rules confer a privilege against disclosure of a confidential matter or communication waives the privilege if the person or a predecessor while holder of the privilege voluntarily discloses or consents to the disclosure of any significant part of the matter or communication, or fails to take reasonable precautions against inadvertent disclosure.

Utah R. Evid. 507(a). Maret argues that during Doe's deposition she disclosed information regarding her communications with prior counsel and thereby waived the privilege under Rule 507. In opposition, Doe argues that the testimony at issue took place after Doe's counsel had made a "continuing objection" to all questions regarding attorney-client communications and that this objection prevented any subsequent waiver. Because the nature and context of this objection is important, we quote the discussion of it in its entirety:

PLAINTIFF'S COUNSEL: Back on the record. I have explained my understanding of the attorney/client privilege to my client, also I explained my understanding of the potential of waiving that. There are certainly some things she doesn't mind if you know but as with any attorney/client privilege that there are certainly things that she would rather be kept between her and her attorney. *For that reason she has decided to assert the attorney/client privilege as to all conversations between her and her counsel.*

CO–DEFENDANT'S COUNSEL: We could do it a couple of ways. I think that by bringing this lawsuit and alleging what she alleges as damages she has waived the privilege for her attorneys in her divorce

action because she is alleging she made decisions, she was damaged by the records coming out, and so I think it is clearly relevant, and I can ask some questions. *You can assert the privilege or not assert the privilege as you choose, but what I am understanding you to say is if I ask any questions about communications she had with attorneys who helped her in her divorce action you will assert attorney/client privilege; it that correct?*

PLAINTIFF'S COUNSEL: That is correct. Although we respect your opinion, we disagree with it. I believe any conversations with an attorney, whether it be in the current litigation or previous litigation, is still protected by the attorney/client privilege. If I am wrong, then I guess we will let the judge tell me I am wrong but *as for this deposition, we are asserting that privilege and she will not be talking about those conversations.*

CO–DEFENDANT'S COUNSEL: Well, for purposes of creating a record to make it clear for the Court what kind of questions I would be asking, *I will ask the questions and I assume you will object to them . . . .*

PLAINTIFF'S COUNSEL: That's fine. Maybe to save some time, rather than having me object after each question, *I will just state that in order not to waive the attorney/ client privilege we don't feel that we can talk about any conversations between [appellant] and her attorney, especially involving the divorce litigation that you are talking about.* So rather than objecting after each question, you might want to read a list of the questions that you would ask.

CO–DEFENDANT'S COUNSEL: Okay.

(Emphasis added.) Although the record is not complete, it appears that co-defendant's counsel did not in fact limit himself to a preliminary reading of the list of questions he wanted to have answered. Rather, at several points in the deposition he asked Doe questions specifically calling for reference to privileged material. Counsel for Doe did not object to some of those questions, and Doe answered them.

¶ 13    This court has not had occasion to consider the effect of so-called continuing objections in this context. There are undoubtedly many circumstances in depositions where continuing objections may be effective and desirable as a way to protect rights, preserve arguments, and facilitate the deposition process. However, a continuing objection cannot effectively protect privileged communications that depend upon confidentiality for their privileged status if a deponent voluntarily discloses that information. For this reason, when an attorney objects to a question on the ground that it seeks material protected by the attorney-client privilege, the attorney typically also instructs the client not to answer. For the same reason, "at a deposition a question calling for privileged information cannot be answered subject to a later judicial ruling on the propriety of the question." 24 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5507 (1986) (footnote omitted). When a client chooses to answer a question calling for privileged material by disclosing privileged communications, she waives the privilege at least as to the disclosed communications.

¶ 14    This principle appears to have been understood by Doe's counsel. After he made the continuing objection, he allowed several questions to be asked regarding attorney-client communications even though he had asserted earlier that "we don't feel that we can talk about any conversations between [appellant] and her attorney." None of the questions he allowed her to answer concerned substantive issues, however. In contrast, when opposing counsel asked substantive questions regarding privileged communications, Doe's counsel objected (despite the earlier discussion) and his client refused to answer:

Q: Did [appellant's former counsel] discuss with you that because of your protective order complaint that there might be an argument that you had waived or given up the privilege to hold those documents as being private?

A: No.

APPELLANT'S COUNSEL: Hold on just a second, I think in my mind you have

crossed the line. I have been trying to be as lax as I could for the sake of moving this case forward letting you talk about what she and her attorney discussed as far as procedural matters. I believe the question crosses the line and gets into the merits of what they were discussing regarding the case and strategy. I believe that crosses the line. In addition to attorney-client privilege, I don't think that is an appropriate question.

Q: Are you going to follow your counsel's advice on that point.

A: Yes.

¶ 15 Implicit in the objection of Doe's counsel is his determination that the questions asked previously had not sought "a significant part" of the privileged communications and thus answering them could not constitute waiver under Rule 507. When opposing counsel asked a question that called for disclosure of matters that were arguably of significance, Doe's counsel properly objected and his client invoked the privilege.

¶ 16 We agree with Doe that her responses to questions calling for disclosure of insubstantial communications protected by the attorney-client privilege did not waive the privilege as to substantial matters. We reach this conclusion not because the continuing objection based on the attorney-client privilege protected Doe from waiving it when she disclosed privileged material (it did not), but rather because her answers to the questions calling for privileged material did not reveal a significant part of the privileged communications as contemplated by Rule 507.

¶ 17 However, at two points in her deposition, Doe disclosed the contents of signifi-

cant privileged communications in response to questions that did *not* call for the disclosure of privileged communications. In other words, she volunteered the information.[3]

¶ 18 Doe argues that because these answers were "non-responsive," counsel could not have objected to the question and therefore the answer cannot be viewed as a waiver of the privilege. Doe is half-right. An objection can only be made to an attorney's question; an attorney cannot effectively object to his client's answer once it has been given. However, this fact has no bearing on whether there has been a waiver. In Utah, the question of whether the disclosure constituted a waiver turns on whether the disclosure was voluntary or excusably inadvertent. *See* Utah R. Evid. 507 (a privilege holder waives the privilege by voluntarily disclosing significant matter or by failing to take reasonable steps to prevent inadvertent disclosure); *see generally* John T. Hundley, *Waiver of Evidentiary Privilege by Inadvertent Disclosure-State Law*, 51 A.L.R. 5th 603, 634 (1997).

¶ 19 It is difficult to view this case as one of inadvertent disclosure as contemplated by Rule 507. Such inadvertence is typically found in the context of document disclosure. *See* Waiver of Evidentiary Privilege by Inadvertent Disclosure, 51 A.L.R. 5th at 635. The notion of inadvertence is not applicable in the context of a deposition where, as here, counsel has carefully explained the legal consequences of disclosure to his client but the client nonetheless chooses to volunteer details concerning privileged communications. Rule 507 recognizes waiver when a privilege holder "voluntarily dis-

3. The content of these disclosures was as follows:
Q: And in your lawsuit, in your divorce lawsuit at that time and, in fact, throughout the time period from the time you answered the complaint through the end of September, you were seeking to keep your kids and keep them in your marital home, weren't you?
A: Yes, I was.
Q: For you to have possession of the home and be able to live there with your kids. Right?
A: But I was also afraid of the fact that my husband was going to tell my children and I thought about that since the day that it happened, and *I discussed it with my attorney and*

*she told me if I ever gave up custody of my children there would probably be no way to get them back.*
Q: How did that agreement to resolve your divorce action come about?
A: I just *told my attorney that I couldn't handle the fact that I may possibly lose my kids every day that I went to court, that I was tired of all the court proceedings that we had been to, that I knew my husband would never stop, and that if I did get custody of the children that he would tell the kids what had happened to me.*
(Emphasis added.)

closes" privileged material; it does not ask whether the disclosure was made with specific intent to waive the privilege. Thus, it is not necessary under Rule 507 to show that a client intended to waive the privilege but only that she intended to make the disclosure. *See Tennenbaum v. Deloitte & Touche,* 77 F.3d 337, 341 (9th Cir.1996) ("the focal point of privilege waiver analysis should be the holder's disclosure . . . not the holder's intent to waive the privilege"); *United States v. Ryans,* 903 F.2d 731, 741 n. 13 (10th Cir.1990) (holding that voluntary disclosure is sufficient to waive the privilege); *Goldsborough v. Eagle Crest Partners Ltd.,* 314 Or. 336, 838 P.2d 1069, 1073 (1992) (holding that once confidentiality is destroyed by disclosure, privilege is waived); *Freeman v. Bianchi,* 820 S.W.2d 853, 861 (Tex.App.1991) ("we do not interpret the term 'voluntary' to encompass only disclosures that are made intentionally and knowingly."). This reasoning is all the more persuasive in circumstances, such as those here, where a party selectively discloses some privileged information to gain an advantage in litigation. *Cf. State v. Hoben,* 36 Utah 186, 198, 102 P. 1000, 1004 (1909) (holding that when a client testifies as to some privileged communications with his attorney, he may not be heard to complain when his attorney is called to impeach him).

¶ 20 We conclude that by volunteering information concerning specific attorney-client communications of a substantial nature during the course of deposition testimony, Doe has waived the privilege. However, we hold Doe's waiver to be limited to the particular subject matter *and* the conversation disclosed by Doe in her deposition testimony referred to in footnote three of this opinion. Accordingly, we modify the district court's ruling as follows: Maret is entitled to depose the attorney with whom, according to Doe's voluntary disclosure, she communicated. The deposition questions should be limited to the communications concerning the disclosed subject matter as quoted in footnote three.

¶ 21 We turn now to an unrelated issue. Maret, in his brief before this court, made reference to and quoted from Doe's "Notice of Intent to Commence Malpractice Action." In addition, Maret attached a copy of the notice as an addendum. Section 78–14–1 of the Utah Code mandates that medical malpractice actions be initiated with the filing of a notice of intent. Section 78–14–12(1)(d) provides that the "proceedings conducted under authority of this section are confidential, privileged, and immune from civil process." Utah Code Ann. § 78–14–12(1)(d) (1996). Whether the notice of intent is part of the prelitigation "proceeding" has never been determined by this court. Today we hold that because the notice of intent serves as the basis for the prelitigation panel review, and because it is often utilized as part of the prelitigation review, it is part of the proceeding and must be kept confidential. Although we decline to impose sanctions for Maret's disclosure, particularly in view of the heretofore unsettled status of the notice, failure to keep prelitigation proceedings confidential may in the future result in sanctions.

¶ 22 Chief Justice HOWE, Justice STEWART, Justice ZIMMERMAN, and Justice RUSSON concur in Associate Chief Justice DURHAM's opinion.

