2007 UT 91

**Rebekah MUNSON, Plaintiff and Appellant,**

v.

**Bruce H. CHAMBERLAIN, M.D., and Central Utah Medical Clinic, Defendants and Appellees.**

No. 20060447.

Supreme Court of Utah.

Nov. 9, 2007.

Kenneth Parkinson, Provo, for plaintiff.

Curtis J. Drake, Troy L. Booher, Salt Lake City, for defendants.

PARRISH, Justice:

## INTRODUCTION

¶ 1 Rebekah Munson's counsel provided to an expert witness two documents he had previously submitted to a medical malpractice prelitigation panel. The question presented on appeal is whether this act violated Utah Code section 78–14–12(1)(d) (2002), which imposes confidentiality requirements on proceedings before such panels. We hold that it did not. Because Munson's counsel had independent access to the documents, he was free to provide them to the expert witness without violating the statute.

## BACKGROUND

¶ 2 Munson claims that Dr. Bruce Chamberlain misdiagnosed her condition and unnecessarily prescribed medication that caused her harm. Before Munson could initiate a medical malpractice lawsuit against Central Utah Medical Clinic and Dr. Chamberlain (collectively, "defendants"), the Utah Health Care Malpractice Act, Utah Code Ann. §§ 78–14–1 to –18 (2002 & Supp.2007), required her to take two preliminary steps. In compliance with these statutory requirements, Munson first served on defendants a notice of her intent to commence an action as mandated by Utah Code section 78–14–8. She then submitted her claim to review by a prelitigation panel as required by Utah Code section 78–14–12(1)(c). As part of the prelitigation review, Munson submitted various documents to the panel, including her medical records; the notice of intent; and an opinion letter prepared by Dr. Greg Kane, a medical expert Munson had retained to evaluate her case. Following completion of the prelitigation review process, Munson initiated a lawsuit against defendants.

¶ 3 After filing suit, Munson hired a second medical expert, Dr. Alexander Jacobs, for the purpose of testifying at trial. Munson's counsel provided Dr. Jacobs with a comprehensive set of documents, including Munson's medical records, a copy of the notice of intent, and a copy of Dr. Kane's opinion letter. On the morning of trial, defendants moved to disqualify Dr. Jacobs from testifying because he had viewed the notice of intent and the opinion letter. Defendants asserted that Munson's counsel had violated the confidentiality requirements of Utah Code section 78–14–12(1)(d) by showing the documents to Dr. Jacobs. They further asserted that they had been prejudiced by this act because they could not cross-examine Dr. Jacobs about his reliance on the documents without violating the confidentiality requirements themselves.

¶ 4 Relying on our decision in *Doe v. Maret*, 1999 UT 74, ¶ 21, 984 P.2d 980, the district court held that the confidentiality requirements had been violated and that sanctions were appropriate. The district court thereafter barred Dr. Jacobs from testifying, declared a mistrial, and ordered Munson to pay defendants' costs incurred in connection with Dr. Jacobs' testimony.

¶ 5 Over a year and a half later, defendants moved for summary judgment because Munson had yet to designate an expert witness to replace Dr. Jacobs. In response, Munson filed a motion to reconsider the order of mistrial and the disqualification of Dr. Jacobs. The district court denied Munson's

motion to reconsider and granted summary judgment to defendants.

¶ 6 Munson appealed, arguing that the district court erred in ruling that the notice of intent and the opinion letter were protected by the confidentiality provisions of Utah Code section 78–14–12(1)(d). Because the interpretation of section 78–14–12(1)(d) is an issue of law, we review the decision below for correctness. *See State v. Burns*, 2000 UT 56, ¶ 15, 4 P.3d 795.

## ANALYSIS

¶ 7 The Utah Health Care Malpractice Act, Utah Code Ann. §§ 78–14–1 to –18 (2002 & Supp.2007), mandates that a plaintiff satisfy two preliminary requirements before initiating a malpractice lawsuit against a health care provider. First, the potential plaintiff must serve the health care provider with a notice of intent to commence an action at least ninety days prior to initiating suit. *Id.* § 78–14–8 (2002). The notice of intent must include "a general statement of the nature of the claim, the persons involved, the date, time and place of the occurrence, the circumstances thereof, specific allegations of misconduct on the part of the prospective defendant, the nature of the alleged injuries and other damages sustained." *Id.*

¶ 8 Second, the potential plaintiff must file a request for review before a prelitigation panel. *Id.* § 78–14–12(2)(a). A copy of the notice of intent must be included with the request for prelitigation review. *Id.* § 78–14–12(2)(b). Upon completion of the prelitigation review by the panel,[1] and after the ninety-day compulsory waiting period from the service of the notice of intent has run, the plaintiff may commence formal litigation. *Id.* §§ 78–14–8, –12(1)(c).

¶ 9 Under the statute, the proceedings of prelitigation panels are "confidential, privileged, and immune from civil process." *Id.* § 78–14–12(1)(d). In a previous case, *Doe v. Maret*, we summarily held that the notice of intent was protected under the statute as part of the "proceedings" before the prelitigation panel. 1999 UT 74, ¶ 21, 984 P.2d 980. This case presents us with a similar claim, requiring us to address whether documents presented to a prelitigation panel are transfigured into confidential documents by virtue of being presented to the panel.

¶ 10 We hold that neither the plain language of the statute nor the statutory purpose supports the broad interpretation of the confidentiality requirement we recognized in *Doe v. Maret*. This opinion clarifies the scope of the confidentiality requirement imposed by section 78–14–12(1)(d), overruling any contradictory precedent in *Doe v. Maret*.

## I. THE SCOPE OF THE PROTECTION AFFORDED BY UTAH CODE SECTION 78–14–12(1)(d)

■ ¶ 11 Defendants argue that Utah Code section 78–14–12 protects the documents and evidence submitted to prelitigation panels, permanently rendering them confidential and privileged for all purposes thereafter. We disagree. The plain language of the statute, common law notions of confidential and privileged communications, and policy considerations all dictate that the protections afforded by the statute apply only to the actual proceedings before such panels.

■ ¶ 12 First, the plain language of the statute does not extend to material submitted to the panel. When interpreting a statute, we look first to its plain language. *See Bilanzich v. Lonetti*, 2007 UT 26, ¶ 13, 160 P.3d 1041. The plain language of section 78–14–12(1)(d) extends only to the "proceedings" conducted by prelitigation panels; it does not protect documents or other evidence *submitted to* such panels. While both the notice of intent and opinion letter were submitted to the prelitigation panel, they were actually created by Munson's counsel and her expert consultant outside of the actual proceedings before the panel.

---

1. Prelitigation panel review need not be completed if the prelitigation hearing is not held within 180 days of the filing of a request for prelitigation panel review, Utah Code Ann. § 78–14–12(3)(b) (2002), or if "[t]he claimant and any respondent ... agree by written stipulation that no useful purpose would be served by convening a prelitigation panel under this section," *id.* § 78–14–12(3)(c)(i).

¶ 13 Because Munson had previously authored and served the notice of intent according to Utah Code section 78–14–8, she had access to that document independent of the proceedings described in Utah Code section 78–14–12. Munson also had independent access to the opinion letter because she acquired it directly from Dr. Kane. In short, while both the notice of intent and the opinion letter were submitted to the panel, Munson had access to them independent of her participation in the proceedings.[2] Because she had independent access to the materials, their use in the pretrial proceedings did not render them confidential.

¶ 14 Second, the common law traditionally interprets privileges narrowly. We previously have concluded that because a privilege has the undesirable effect of excluding relevant evidence, the term "privileged" should be " 'strictly construed in accordance with its object.' " *Gold Standard, Inc. v. Am. Barrick Res. Corp.*, 801 P.2d 909, 911 (Utah 1990) (quoting *Jackson v. Kennecott Copper Corp.*, 27 Utah 2d 310, 495 P.2d 1254, 1257 (1972)). We have accordingly construed the scope of privileged communications narrowly to protect only the communications themselves rather than their contents.

¶ 15 This approach is consistent with the one taken by the United States Supreme Court in addressing the scope of the attorney-client privilege, where it stated:

> The protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his

knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Upjohn Co. v. United States*, 449 U.S. 383, 395–96, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (internal quotation marks and brackets omitted); *see also Jackson*, 495 P.2d at 1255, 1257 (holding that a smelting facility that regularly forwarded emissions data to its legal counsel "cannot foreclose the discovery process by the simple expedient of funneling the matter into its counsel's custody"); *cf.* Utah R. Evid. 408 (noting that even though evidence of settlement negotiations is inadmissible in Utah courts, "[t]his rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations").

¶ 16 This same analysis supports our conclusion that the privilege should extend only to the proceedings themselves, not to the facts, documents, and other evidence submitted to prelitigation panels. An overly broad application of the confidentiality requirement—extending it to documents and evidence that would otherwise be available through independent sources—would unfairly influence future litigation by allowing parties to use prelitigation proceedings as a device to strategically obscure relevant facts, expert opinions, and other legal documents through the simple expedient of presenting them to a prelitigation panel. Prelitigation proceedings were never intended to be a trap for the unwary whereby a party could lose her ability to utilize otherwise available evidence or her attorney's or expert's own work product.

¶ 17 Finally, the public policies behind the prelitigation panels and their attendant confidentiality requirement similarly support a

---

**2.** We note that Utah Code section 78–14–12(1)(d) likewise does not bar *defendants* from divulging the notice of intent or introducing it into evidence. The notice of intent was served on defendants pursuant to Utah Code section 78–14–8. Therefore, defendants also had access to the notice of intent independent of their participation in the proceedings rendered confidential by Utah Code section 78–14–12(1)(d). The broad rule advocated by defendants, which would render the notice of intent completely confidential after it is submitted to the prelitigation panel, has the potential to seriously handicap health care providers. Until a complaint is filed, a potential

defendant's only source of knowledge about the vital elements of a claim—such as the identity of the potential plaintiff and the nature and date of the claimed injury—is the notice of intent. If a potential defendant were unable to share this basic information with medical experts, insurance carriers, and even legal counsel in order to evaluate the merits of the potential lawsuit, the entire purpose of the prelitigation process would be negated. Similarly, if defendants were independently able to obtain Dr. Kane's opinion letter through the discovery process, section 78–14–12(1)(d) would not bar them from introducing it into evidence.

narrow interpretation of the confidentiality provision. The stated purpose of the prelitigation panel proceedings is to encourage "the early evaluation and settlement of [malpractice] claims." Utah Code Ann. § 78–14–2 (2002). But precluding the future use of all opinion evidence and other documents submitted to a prelitigation panel would discourage parties from submitting this material to the panel, thereby severely limiting the panel's and the parties' ability to honestly evaluate the potential claim. In short, an overly broad application of Utah Code section 78–14–12(1)(d) would undermine the very purpose of prelitigation panel review.

■ ¶ 18 We conclude that documents and information obtained by a party solely through participation in proceedings before a prelitigation panel are confidential, privileged, and immune from civil process pursuant to Utah Code section 78–14–12(1)(d). A party is free, however, to share materials created by that party or obtained by that party independent of the proceedings before the panel. Because the items at issue in this appeal were, in fact, created by Munson's own counsel and consulting expert, Munson's counsel was free to disclose them to Munson's testifying expert and defendants were then free to use them as a basis for cross-examining that expert.[3]

## II. THE LAST PARAGRAPH OF *DOE v. MARET*

¶ 19 In holding that Munson violated the confidentiality requirements of Utah Code section 78–14–12(1)(d), the district court relied heavily on our opinion in *Doe v. Maret*, 1999 UT 74, ¶ 21, 984 P.2d 980. In the last paragraph of that opinion, we commented on a matter unrelated to the question at issue in that appeal. *Id.* In his briefing to this court, Maret had attached a copy of the notice of intent that he had received. *Id.* In her reply brief, the plaintiff had asserted that this act violated the confidentiality requirement of Utah Code section 78–14–12(1)(d). We agreed, stating, "Today we hold that because

the notice of intent serves as the basis for the prelitigation panel review . . . it is part of the proceedings and must be kept confidential." *Maret*, 1999 UT 74, ¶ 21, 984 P.2d 980. While we declined to impose any sanctions, we stated that future infractions could be penalized. *Id.*

■ ¶ 20 Upon a more considered analysis of the issue, we overrule the last paragraph of *Maret*. Although we are normally bound by our own precedent, we may overrule it where "the decision is clearly erroneous or conditions have changed so as to render the prior decision inapplicable." *State v. Menzies*, 889 P.2d 393, 399 n. 3 (Utah 1994) (internal quotation marks omitted). The *Maret* decision is clearly erroneous inasmuch as it suggests that all documents submitted to a prelitigation panel are confidential—a suggestion that is simply not supported by the statutory language.

¶ 21 Our decision to overrule the last paragraph of *Maret* is supported by the fact that it "is not the most weighty of precedents." *Id.* at 399. The paragraph at issue was appended to our opinion in *Maret* almost as an afterthought. Indeed, we devoted only a single paragraph to our analysis of the issue, an analysis consisting almost entirely of a conclusory sentence asserting that because the notice of intent is part of the proceedings, it must be kept confidential. This lack of analysis, combined with the unique way in which the issue was presented, reduces the precedential value of the applicable language. Unlike the vast majority of cases in which we either affirm or assign error to a decision by a lower court, in *Maret* we were asked to exercise our inherent jurisdiction over the proceedings before us to impose sanctions for an act that occurred during briefing. Because of this unique procedural posture, the issue did not benefit from the focus and refinement afforded issues actually litigated in the lower courts. Moreover, because the issue was first raised in a reply brief, we were not able to benefit from any adversarial

---

**3.** Under our holding, counsel for defendants would be precluded from disclosing or offering into evidence at trial Dr. Kane's opinion letter because defendants' counsel had access to the letter solely by virtue of participation in the proceedings before the prelitigation panel. Once Munson provided the letter to her testifying expert, however, she effectively waived the privilege, rendering the letter available for use by defendants' counsel.

briefing of the issue. We accordingly conclude that it is appropriate to overrule the last paragraph of our opinion in *Doe v. Maret.*

## CONCLUSION

¶ 22 Munson did not violate the confidentiality requirements imposed by Utah Code section 78–14–12. Thus, the district court's orders awarding sanctions, disqualifying Dr. Jacobs from testifying, and awarding costs to defendants were erroneous. Because Dr. Jacobs' disqualification was the basis for the summary judgment entered against Munson, the summary judgment was also erroneous. We accordingly reverse the district court's order granting summary judgment and remand the case for further proceedings consistent with this opinion.

¶ 23 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH'S opinion.