**2018 UT App 138**

## THE UTAH COURT OF APPEALS

JAMES KRAHENBUHL, KAYLEEN KRAHENBUHL,
AND ESTATE OF TANNER KRAHENBUHL,
*Appellants,*
*v.*
THE COTTLE FIRM, ROBERT W. COTTLE, MAINOR EGLET
COTTLE LLP, MILLER TOONE PC, AND P. MATTHEW MUIR,
*Appellees.*

Opinion
No. 20160977-CA
Filed July 12, 2018

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 150906163

Karra J. Porter, Kristen C. Kiburtz, and Bruce M.
Pritchett, Attorneys for Appellants

Matthew N. Evans, Attorney for Appellees The
Cottle Firm, Robert W. Cottle, and Mainor Eglet
Cottle LLP

Gregory J. Sanders and Sarah C. Vaughn, Attorneys
for Appellees Miller Toone PC and P. Matthew Muir

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
KATE A. TOOMEY and DIANA HAGEN concurred.

ORME, Judge:

¶1     This case involves alleged legal malpractice on the part of
the Appellees—two attorneys and the firms for which they
worked during the pendency of the underlying case
(collectively, Prior Counsel)—for failure to timely file several
product liability claims after Tanner Krahenbuhl was killed in a
motor home accident. James Krahenbuhl, Kayleen Krahenbuhl,

and the Estate of Tanner Krahenbuhl (collectively, the Krahenbuhls) appeal from the district court's interlocutory order denying their objection to Prior Counsel's subpoena duces tecum.[1] The Krahenbuhls assert that the district court erred in denying their objection because the subpoena violates the attorney-client privilege. We agree and therefore reverse.

BACKGROUND

¶2    In August 2009, Tanner Krahenbuhl was killed while riding in a motor home that was traveling down a steep mountain road near Powder Mountain Resort. Several witnesses stated that the motor home was traveling at a high rate of speed down the road and that its brakes were smoking before it crashed. The Krahenbuhls hired Prior Counsel to pursue several claims, including a negligence claim against Powder Mountain on a theory of premises liability as well as product liability claims against the manufacturer of the motor home's brakes.

¶3    Two years and one day after Tanner's death, Prior Counsel filed a one-count complaint for negligence against Powder Mountain. Powder Mountain's answer asserted that the two-year statute of limitations barred the claim because it was filed one day late. In November 2012, over a year after the complaint was filed, Prior Counsel withdrew from the case. In December 2012, the Krahenbuhls retained a new attorney (Successor Counsel). Thereafter, Powder Mountain moved for summary judgment, arguing that the claim against it should be dismissed because it was not timely filed. The district court granted the motion.

---

1. Appeals from interlocutory orders are discretionary. We granted the Krahenbuhls permission to appeal pursuant to rule 5(a) of the Utah Rules of Appellate Procedure.

¶4 In August 2015, the Krahenbuhls, through Successor Counsel, filed a legal malpractice action against Prior Counsel for failing to timely file the lawsuit against Powder Mountain and for failing to file any claims against the brake manufacturer. In their answer, Prior Counsel asserted the affirmative defense of comparative negligence, contending that the Krahenbuhls and Successor Counsel were at least in part responsible for the untimely filing of the Krahenbuhls' claims. After Prior Counsel moved for summary judgment, the parties stipulated to dismissing the Krahenbuhls' claims as to Prior Counsel's failure to timely file the negligence claim against Powder Mountain, because the district court had determined in a subrogation lawsuit that Powder Mountain did not owe a duty to the Krahenbuhls.

¶5 Discovery continued on the issue of whether Prior Counsel committed legal malpractice for failing to assert the product liability claims in an action filed before the expiration of the statute of limitations. Prior Counsel filed a notice of issuance of a subpoena duces tecum (the Subpoena), requesting all documents in Successor Counsel's file that related to the underlying lawsuit. The Krahenbuhls objected, arguing that the Subpoena sought materials protected by the attorney-client privilege. In response, Prior Counsel filed a statement of discovery issues, seeking an order requiring the Krahenbuhls to comply with the Subpoena. Prior Counsel argued that the Krahenbuhls waived the attorney-client privilege as to communications between themselves and Successor Counsel because the privileged communications were "at issue." First, citing a number of cases from other jurisdictions, Prior Counsel argued that "suing one attorney for malpractice amounts to a waiver of the privilege as to all attorneys involved in the underlying litigation." Second, they argued that Successor Counsel was at fault because he "could have amended the complaint to add the claims he now argues [Prior Counsel] should have brought." The district court agreed, without

explanation, and ordered the Krahenbuhls to comply with the Subpoena. This interlocutory appeal followed.

## ISSUE AND STANDARD OF REVIEW

¶6     The Krahenbuhls contend that the district court erred by determining that they had waived the attorney-client privilege as to communications between them and Successor Counsel and by ordering them to comply with the Subpoena.[2] "Whether a party has waived the attorney-client privilege is an issue of law, which we review for correctness[.]" *Terry v. Bacon*, 2011 UT App 432, ¶ 9, 269 P.3d 188 (quotation simplified).

## ANALYSIS

¶7     The Krahenbuhls assert that, under *Doe v. Maret*, 1999 UT 74, 984 P.2d 980, *overruled on other grounds by Munson v. Chamberlain*, 2007 UT 91, 173 P.3d 848, and *Terry v. Bacon*, 2011 UT App 432, 269 P.3d 188, they did not waive the attorney-client privilege with respect to communications with Successor Counsel simply by retaining Successor Counsel in the underlying lawsuit and filing this legal malpractice action. We agree.

¶8     The attorney-client privilege, recognized in rule 504(b) of the Utah Rules of Evidence and Utah Code section 78B-1-137(2), "is intended to encourage candor between attorney and client and promote the best possible representation of the client."

---

2. The Krahenbuhls also contend, as they did below, that the court erred in determining that they waived the attorney work product privilege. Because we agree that the district court erred in determining that they waived the attorney-client privilege, we need not address this second issue.

*Maret*, 1999 UT 74, ¶ 7 (quotation simplified). "Although the legislature and courts have carefully guarded the integrity of the privilege, we have long held that it can be waived by a client." *Id.* As hereafter explained, one such instance of waiver is the "at issue" waiver.[3]

¶9 Under Utah law, the "at issue" waiver is triggered when the party seeking application of the attorney-client privilege places "'attorney-client communications at the heart of a case.'"[4]

---

3. The general exception to the attorney-client privilege that applies in legal malpractice cases, *see* Utah R. Evid. 504(d)(3), is not at issue in this appeal, because the dispute here concerns the communications between the Krahenbuhls and Successor Counsel, not the communications between the Krahenbuhls and Prior Counsel, the defendants to this legal malpractice action.

4. In general, jurisdictions employ one of three variations of the "at issue" waiver. We outlined each of these in *Terry v. Bacon*, 2011 UT App 432, 269 P.3d 188:

> The first of these general approaches is the "automatic waiver" rule, which provides that a litigant automatically waives the privilege upon assertion of a claim, counterclaim, or affirmative defense that raises as an issue a matter to which otherwise privileged material is relevant. The second set of generalized approaches provides that the privilege is waived only when the material to be discovered is both relevant to the issues raised in the case and either vital or necessary to the opposing party's defense of the case. Finally, several courts have recently concluded that a litigant waives the attorney-client privilege if, and only if, the litigant directly puts the attorney's advice at issue in the litigation.

(continued…)

*Terry*, 2011 UT App 432, ¶ 15 (quoting *Maret*, 1999 UT 74, ¶ 9). More specifically, "[c]ommunications between the attorney and client are 'placed in issue where *the client* asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.'" *Id.* ¶ 16 (emphasis added) (quoting *Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994)).

¶10   Here, Prior Counsel assert a defense to which the communications between the Krahenbuhls and Successor Counsel are allegedly relevant. Because the Krahenbuhls, the holder of the privilege, are not the party placing the privileged communications at issue, they have not waived the privilege. Notwithstanding, Prior Counsel assert that, pursuant to *Lyon*

---

(…continued)

*Id.* ¶ 16 n.1 (quotation simplified). In *Terry*, after outlining the three different tests, we stated that, because we believed the attorney-client privilege had been waived under each of the tests, we did not need to decide when a matter is placed "at issue." *Id.*

Upon reflection, we conclude that our Supreme Court already decided this question in *Doe v. Maret*, 1999 UT 74, 984 P.2d 980. There, the Court explained that "the fact that a lawyer may have credible and important information gained through communication with a client does not itself justify the setting aside of the privilege (even when the lawyer is the only non-party who may have that information)." *Id.* ¶ 10. Rather, a party waives the attorney-client privilege when it places attorney-client communications "at the heart of a case." *Id.* ¶ 9. In our view, the test that our Supreme Court articulated in *Maret* is consistent with the third test described in *Terry*, which is sometimes referred to as the *Rhone–Poulenc* test. *See Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994).

*Financial Services, Inc. v. Vogler Law Firm, PC*, No. 10-cv-565, 2011 WL 3880948 (S.D. Ill. Sept. 2, 2011), an unreported federal district court case that applied the *Rhone–Poulenc* test to a dispute in a legal malpractice case, the factual backdrop of the underlying case here requires the conclusion that simply by bringing the malpractice action the Krahenbuhls put their communications with Successor Counsel at issue.

¶11    In *Lyon*, the initial attorneys the plaintiff hired in the underlying case allegedly committed misconduct during discovery. *Id.* at *1. The plaintiff fired its initial attorneys and hired successor counsel to handle the trial. *Id.* At trial, the jury returned a large verdict against the plaintiff. *Id.* The plaintiff then sued its initial attorneys for malpractice, *id.*, and in doing so, sought damages in the amount of the adverse verdict, *id.* at *3. The initial attorneys subsequently filed a third-party complaint against successor counsel, seeking contribution, and sought the production of privileged communications between the plaintiff and successor counsel. *Id.* at *1. The district court concluded that the plaintiff waived the privilege because the plaintiff sought damages that occurred after it hired successor counsel, and it was unclear whether the initial attorneys or successor counsel were responsible for the plaintiff's losses. *Id.* at *3.

¶12    In addition to being nonbinding, *Lyon* is inapposite, and we decline to follow it here. The Krahenbuhls are not seeking damages that occurred outside of Prior Counsel's representation and therefore have not placed at issue their communications with Successor Counsel.

¶13    Prior Counsel also assert that Successor Counsel is at fault for the preclusion of the Krahenbuhls' product liability claims. According to Prior Counsel, Successor Counsel could have brought the claims by amending the complaint and alleging that the discovery rule tolled the statute of limitations. Prior Counsel

assert that "Successor Counsel's underlying representation of the Krahenbuhls was likely an intervening cause of the Krahenbuhls' alleged injury" because Successor Counsel failed to argue that Powder Mountain did not specifically plead its statute of limitations defense. According to Prior Counsel, a determination that the Krahenbuhls did not waive the attorney-client privilege would allow them to use the privilege both as a sword and a shield, which we have said a party cannot do. *See Terry v. Bacon*, 2011 UT App 432, ¶ 17, 269 P.3d 188. But the Krahenbuhls have not attempted to rely on any privileged communications. Only the client can waive the attorney-client privilege, *see Moler v. CW Mgmt. Corp.*, 2008 UT 46, ¶ 17, 190 P.3d 1250, including under the at-issue rationale, and here it is Prior Counsel, not the Krahenbuhls, who have attempted to place the Krahenbuhls' privileged communications with Successor Counsel at issue.

¶14 Prior Counsel additionally argue that a plaintiff filing a legal malpractice claim against one attorney in an underlying lawsuit waives the attorney-client privilege as to all the attorneys who represented the plaintiff in the underlying lawsuit. We find this argument unavailing. In support of their assertion, Prior Counsel cite cases in which courts have required the production of the successor counsel's files. Typical of these—and the case upon which Prior Counsel primarily relies—is *Pappas v. Holloway*, 787 P.2d 30 (Wash. 1990) (en banc). But in *Pappas*, the court applied the second variation, *supra* note 4, of the at-issue waiver, *see* 787 P.2d at 36 (stating that it was applying the second variation of the at-issue waiver, also known as the *Hearn* test), which presents a lower bar for parties seeking the production of privileged communications. We cannot adopt the wide-sweeping rule that Prior Counsel advocates, because it is at odds with the rule our Supreme Court articulated in *Maret*. *See* 1999 UT 74, ¶ 9 (stating that a party waives the attorney-client privilege "by placing attorney-client communications at the heart of a case").

¶15    In sum, we conclude that requiring the Krahenbuhls to comply with the Subpoena is inconsistent with the principles outlined in *Maret* and *Terry*, and therefore the court erred in determining that the Krahenbuhls waived the attorney-client privilege.[5]

CONCLUSION

¶16    We conclude that the district court erred in determining that the Krahenbuhls waived the attorney-client privilege as to communications between them and Successor Counsel and by ordering them to comply with the Subpoena. We therefore reverse the order denying the Krahenbuhls' objection to the Subpoena and remand for such further proceedings, consistent with this opinion, as may now be in order.

———————

5. Prior Counsel's brief includes the following request: "Should this court find no waiver exists, defendant should be permitted to re-argue waiver, pending additional discovery." They also assert that "the Krahenbuhls should be required to produce a privilege log to allow [Prior Counsel] to evaluate [the Krahenbuhls'] privilege claims." We do not address these matters because the district court is in the better position to do so, and their resolution is unnecessary to this appeal. *See Summit Water Distrib. Co. v. Summit County*, 2005 UT 73, ¶ 50, 123 P.3d 437 ("Our settled policy is to avoid giving advisory opinions in regard to issues unnecessary to the resolution of the claims before us.").