495 P.2d 1254

Paul R. JACKSON et al., Plaintiffs
and Respondents,

v.

KENNECOTT COPPER CORPORATION, a
foreign corporation, Defendant
and Appellant.

No. 12396.

Supreme Court of Utah.

April 10, 1972.

2. Sec. 63–30–8, U.C.A. 1953, Replacement Vol. 7A.

James B. Lee, and LeRoy S. Axland, of Parsons, Behle & Latimer, Salt Lake City, for defendant and appellant.

John D. Pearce, and Wendell E. Bennett, of Strong & Hanni, Salt Lake City, for plaintiffs and respondents.

CALLISTER, Chief Justice:

Plaintiffs initiated this action claiming they had sustained damage to their motor vehicles, while they were parked in a parking lot maintained by defendant. Plaintiffs alleged that from December 15, 1966, through January 6, 1969, defendant negligently allowed acid or other harmful substances to flow into the air about its smelter facilities in Salt Lake County; these substances, when associated with certain atmospheric conditions, caused damage to the vehicles of the various plaintiffs.

Plaintiffs propounded certain interrogatories to defendant, included therein was an inquiry as to the existence and the location of any records concerning the amount of acid or smelting materials which escape during a designated period of time.

Defendant responded that the record of emissions is maintained in the legal counsel files as privileged information collected at the request of legal counsel. Defendant explained that several times daily, the personnel of the smoke test section of the smelter process control and improvement department take samples of flue gas, which they test and analyze to determine the amount of sulfur dioxide, sulfuric acid, and dust (arsenic, copper, lead, and molybdenum). These daily calculations are tabulated on a monthly report, which is forwarded to legal counsel.

Plaintiffs filed a motion for production of these documents under Rule 34, U.R.C.P. In their motion plaintiffs asserted that it was based on good cause in that the documents sought contain information regarding the emission of acid and other materials and that plaintiffs' causes of action were based on the damages caused by such emissions.

Defendant filed an affidavit in opposition to the motion wherein it was related that since 1959 when defendant purchased the Garfield Smelter from American Smelting and Refining Company, the rec-

ords designated in the motion had been sent pursuant to request to defense counsel in anticipation of litigation. Defendant characterized these records as privileged communications between a client and its attorney.

The trial court granted plaintiffs' motion, and defendant filed a petition for interlocutory appeal, which this court granted.

On appeal, defendant urges that plaintiffs had failed to indicate by means of a verified motion or supporting affidavit a factual basis to support the requisite claim of "good cause" as required in Rule 34, U.R.C.P., for an order for production of documents. Defendant further contends that plaintiffs' motion contained mere opinions and conclusions which were not sufficient as a matter of law to constitute good cause.

 There is no settled understanding of what "good cause" means; since the determination depends to a large extent upon the facts of each case, a wide latitude of discretion is necessarily vested in the trial judge. Although the ability of the movant to obtain the desired information by other means is relevant, the real question is whether the movant can obtain the facts without production of the documents. "Good cause" is shown where the full, accurate disclosure of facts, which it is the purpose of the discovery process to secure, could not be accomplished through other means.[1] The moving party must make a showing not only that the documents are relevant, and are in the possession of the other party, but that the documents sought are necessary for proof of the case and either cannot be obtained in any other way or that obtaining them another way would involve extraordinary expense that the moving party should not in fairness be expected to bear.[2]

Defendant has emphasized the fact that plaintiffs' motion was not verified or supported by affidavits. In Goosman v. A. Duie Pyle, Inc.,[3] the court stated:

. . . although it is generally agreed that the better practice under Rule 34 is to support, by affidavit, the statement of facts necessary to a showing of good cause, under some circumstances such an affidavit is not indispensable. Professor Moore states that Rule 7(b) and 11 of the Federal Rules of Civil Procedure do not require the facts alleged in a motion and not otherwise ap-

1. Southern Railway Company v. Lanham, (CA 5th 1968), 403 F.2d 119, 126, 127, 129; Parrett v. Ford Motor Co., 13 F.R. Serv.2d 34.13, Case 3, 47 F.R.D. 22 (1968); Shulz v. Midtown Supermarket, Inc., 13 F.R.Serv.2d 34.13, Case 5, 49 F.R.D. 94 (1969).

2. Union Carbide Corp v. Filtrol Corp., 12 F.R.Serv.2d 34.13, Case 4 (1967).

3. (CA 4th, 1963) 320 F.2d 45, 53.

pearing of record must be sworn to or contained in an affidavit and cites several cases where lack of an affidavit was not fatal. In any event, the facts of this case would not command a ruling that an affidavit was required. At the time of the motion almost all of the facts alleged therein to show good cause were properly before the court in the filed interrogatories, depositions and stipulations. . . Under the circumstances the essential facts relied upon in support of the motion for production of documents were properly before the District Court and no affidavit was required.[4]

■ In the instant action, the trial court did not abuse its discretion by its determination that a showing of good cause had been made, since the documents sought all related to the subject matter of the interrogatories and the central issues of the action and were solely in the possession and/or knowledge of the defendant.

Defendant further contends that the records were privileged communications and were not subject to inspection or copying under any circumstances. Specifically, defendant characterizes records which merely reflect a factual matter, the content of the

samples of flue gas taken from its smoke stacks, as privileged communications. Defendant further asserts that it commenced this communication from the time that it acquired the Garfield Smelter in 1959.

In Radiant Burners, Inc. v. American Gas Association,[5] the court admonished:

> Certainly, the privilege would never be available to allow a corporation to funnel its papers and documents into the hands of its lawyers for custodial purposes and thereby avoid disclosure.
>
> . . .
>
> In balancing the competing goals of the free and unobstructed search for the truth with the right and absolute necessity for confidential disclosure of information by the client to its attorney to gain the legal advice sought thereby, the courts will realize that they are not dealing with a blanket privilege. The limitation surrounding any information sought must be determined for each document separately considered on a case-by-case basis. . . .

■ Do the records in the instant action qualify as a privileged communication?

■ In United States v. United Shoe Machinery[6] the court stated that the rule,

---

4. Also see Speedrack Inc. v. Baybarz, 12 F.R.Serv.2d 34.13, Case 7, 45 F.R.D. 254 (1968); Luey v. Sterling Drug, Inc., 9 F.R.Serv.2d 33.353, Case 1, 240 F.Supp. 632 (D.C., 1965); City of Phoenix v. Peterson, 11 Ariz.App. 136, 462 P.2d 829, 833–834 (1969).

5. (CA 7th, 1963) 320 F.2d 314, 98 A.L.R. 2d 228, 239–240.

6. (U.S.D.C. D.Mass.1950) 89 F.Supp. 357, 358–359.

which allows a client to prevent the disclosure of information which he has given to his attorney for the purpose of securing legal assistance, is founded upon the belief that it is necessary in the interest and administration of justice; but the privilege should be strictly construed in accordance with its object. The court further cited the general requirements which must be shown by the party asserting the privilege. The factors relevant to the instant case were that the communication must be "for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort . . . "

The principles of United Shoe were applied in United States v. Aluminum Company of America [7] wherein the court held that where there is a request for factual information by the attorney to the client for the purpose of forming an opinion as to the legality of a contemplated legal action, the document is privileged. In Ford Motor Company v. O. W. Burke Company [8] the court held that where the data and information are given to the party's attorney with a bona fide intention of being laid before the lawyer for his legal analysis and advice as to the particular prospective litigation, the memorandum qualifies as a confidential communication.

In the instant action the burden was upon defendant to prove that the records were a privileged communication. Defendant did not assert that the data was assembled for the primary purpose of submitting the material to its attorney for legal analysis and advice. Defendant's claim was buttressed on a generalization that litigation was anticipated from the day of acquisition of the Garfield Smelter. If this be the circumstance, it would be appropriate to draw defendant's attention to Rule 26(2), Utah Rules of Evidence:

> Exceptions. Such privilgecs shall not extend (a) to a communication if the judge finds that sufficient evidence, aside from the communication, has been introduced to warrant a finding that the legal service was sought or obtained in order to enable or aid the client to commit or plan to commit a crime or a tort; or . . .

The type of information which defendant has compiled in the records is discoverable; defendant cannot foreclose the discovery process by the simple expedient of funneling the matter into its counsel's custody.

In Mower v. McCarthy,[9] this court held that a writing is discoverable under Rule 34, U.R.C.P., where it involves evidence of objective facts dealing with events, condi-

7. (U.S.D.C. N.D.N.Y.1960) 193 F.Supp. 251, 252.

8. 59 Misc.2d 543, 299 N.Y.S.2d 946 (1969).

9. 122 Utah 1, 14, 245 P.2d 224 (1952).

tions, or circumstances and no expert conclusions or lawyer's impressions, conclusions, opinions or theories are involved.

The order for production of documents of the trial court is affirmed. Costs to plaintiffs.

TUCKETT, ELLETT, and CROCKETT, JJ., concur.

HENRIOD, Justice (dissenting):

I respectfully dissent on the ground that the record before us does not reflect that the information demanded was *not* privileged. The affidavit of defendant's attorney that such information *was* privileged, based on facts stated therein, has not been denied. In my opinion such affidavit reflects a privileged situation under the very criteria upon which plaintiffs' counsel rely to defeat the privilege. They cite United States v. U. S. Shoe as their authority. The undisputed affidavit of defendant's counsel fits into every slot of that case's enunciated criteria, to determine privilege, there being 15 of them. One of them is that the information was secured for the purpose of "(i) . . . (ii) . . . or (iii) assistance in some legal proceedings . . . ." The plaintiffs say (1) that the affidavit says the information was not privileged because acquired "in *anticipation* of litigation" and (2) that the criteria governs whether "the privilege is claimed by an individual or a corporation," but "because of the unique characteristics of the corporate client *there is a special rule regarding this privilege.*" [1]

At to these assumptions, it is noted that the test laid down in the rule is said to be "for the purpose of securing . . . assistance in some legal proceedings,"—and plaintiffs urge that this means proceedings presently extant. This, of course, would mean that if defense counsel requested and obtained information from his client one day before the suit against such client is filed, it is not privileged, but if received five minutes after the court clerk rings up the complainant's filing fee, defendant may enjoy immunity from disclosure by seeking sanctuary in the Church of Split Seconds. If such conclusion be true, its absurdity calls for euthanasia of the rule. The plaintiffs' interpretation of U. S. v. U. S. Shoe (which didn't interpret the rule that way, but simply said "*some* legal proceedings," which may, in my opinion, connote either past, present or future legal proceedings) is contrary to someone else's version,—and I prefer a version that would strengthen the attorney-client privilege rather than to have strangers wandering around law offices with rulish skeleton keys, opening confidential cabinets of counselors at law. In support of its urgence for disclosure and

---

1. This appears to be a yes-it-is but no-it-isn't explanation of a simple logical problem rendered illogical.

the espousal of an exception to the rule in the case of a corporation, plaintiffs cite the significantly named case of Radiant Burners v. American Gas to say, "Certainly the privilege would never be available to allow a corporation to funnel its papers and documents into the hands of its lawyers . . . *and thereby avoid disclosure.*" This aside is an unwarranted innuendo attributing deception to the corporation here and/or a suborning thereof by its counsel,—clearly not reflected in the record before us and consequently irrelevant. Hence, I consider plaintffs' position in (1) and (2) above as being unproductive of any sensible answer to defendant's claim that the information sought was protected under the privilege traditionally reserved in the attorney-client relationship.

It is submitted that the result of the main opinion is to favor the destruction of professional expertise and alertness, compensate indolence, and abort a rule whose tenor seemingly is intended to nourish the attorney-client relationship, exceptions to which devour it. The uncontradicted affidavit of counsel for defendant is watered down by irrelevant suggestions that what was said therein was insincere and an attempt, without warrant, to evade the very rule to which the main opinion renders lip service but discards by reference to matters dehors the record, and by citing authorities irrelevant to the fact and procedural situation here. It cites the iridescent case of Radiant Burners v. American Gas,—as did the plaintiffs,—to support the thesis that the subject information was not privileged. The same inference indulged by the plaintiffs, of deception on the part of defendant, finds approbation by the court based on something undiscoverable in this record.

In arriving at its conclusion the main opinion draws on a rule not thought of by the plaintiffs,—Rule 26(2)—having to do with the fact that "*IF* the judge finds that *sufficent evidence,* aside from the communication, has been introduced to warrant a finding that the legal service *was sought or obtained in order to enable or aid the client to commit a crime or a tort . . .,*" suggests that there was "sufficient evidence" here, aside from the communication, to evince some sort of criminality and/or tortious conduct on the part of defendant in asserting the claim of privilege. There is not only *not* "sufficient evidence" here to support such a conclusion or argument, but there is *no* evidence to support it. When the main opinion says the "defendant cannot foreclose the discovery process by the simple expedient of funneling the matter into its counsel's custody," (where there is no evidence to support such conclusion) it not only implies some sort of crime or tort, but invites another observation. One might paraphrase such gratuity by saying, "This court cannot *invoke* the rules having to do with the discovery process by

the simple expedient of funneling an irrelevant and nonexistent factual situation into the court's custody."

I think the trial court's order should be reversed.