GOLD STANDARD, INC., Plaintiff and Appellant,

v.

AMERICAN BARRICK RESOURCES CORPORATION; Barrick Resources (USA), Inc.; Texaco, Inc.; Getty Oil Company; and Getty Mining Company, Defendants and Appellees.

No. 890393.

Supreme Court of Utah.

Nov. 8, 1990.

James S. Lowrie, Christopher L. Burton, George W. Pratt, James W. Peters, Barry G. Lawrence, and Deno G. Himonas, Salt Lake City, for Gold Standard.

Stephen G. Crockett, Robert S. Clark, Jill N. Parrish, and Brian J. Romriell, Salt Lake City, for Texaco and Getty.

Gordon L. Roberts, Francis M. Wikstrom, John B. Wilson, and J. Michael Bailey, Salt Lake City, for Barrick.

DURHAM, Justice:

Gold Standard, Inc., brings this interlocutory appeal from the trial court's denial of its motion to compel production of a document which the trial judge found to be privileged. We reverse.

In December 1986, Gold Standard filed the lawsuit from which this appeal arises against several entities, including appellees. One of Gold Standard's claims in the suit is that appellees, who were all involved in the sale of property known as the Mercur Mine, structured the sale in derogation of Gold Standard's interests in the mine. On May 10, 1989, Gold Standard filed a motion to compel discovery of a letter dated June 11, 1985, addressed to Parsons, Behle & Latimer (attorneys in this appeal for American Barrick Resources Corporation and Barrick Resources (USA), Inc.) and signed by representatives of each appellee. Appellees resisted production of the letter, claiming that it was protected by the attorney-client privilege and the work product doctrine. Gold Standard maintains, and argued below, that the June 11 letter is a commercial agreement containing terms regarding the sale of the Mercur Mine and is therefore not protected by either privilege. The trial judge, after an *in camera* inspection, held that the letter was "privileged" and denied Gold Standard's motion to compel.[1] Having reviewed the letter, we hold that it is not protected by either the work product doctrine or the attorney-client privilege.

## I. WORK PRODUCT DOCTRINE

█ The work product doctrine is outlined in Utah Rule of Civil Procedure 26(b)(3). There are three essential requirements for materials to be protected by the work product doctrine under rule 26(b)(3): (1) the material must consist of documents or tangible things, (2) prepared in anticipation of litigation or for trial, (3) by or for another party or by or for that party's representative.[2]

█ The June 11 letter satisfies the first and third requirements for work product protection, but it does not satisfy the second requirement. It was not prepared "in anticipation of litigation or for trial." This court recently outlined the contours of this second requirement in another interlocutory appeal involving the parties to this action. *Gold Standard, Inc. v. American Barrick Resources Corp.*, 144 Utah Rep. 3 (September 21, 1990). In order to satisfy the second requirement for protection, the primary purpose behind the creation of a document must be "to assist in pending or impending litigation." *Id.* (quoting *United States v. Gulf Oil Corp.*, 760 F.2d 292, 296

---

1. The trial judge did not specify whether he found the document "privileged" under the attorney-client privilege or the work product doctrine. We address both theories here.

2. Satisfying these requirements does not automatically guarantee protection. If the party seeking discovery can demonstrate substantial need for the materials and that the materials or their equivalent cannot be obtained without substantial hardship, the party will be entitled to those materials. *See* Utah R.Civ.P. 26(b)(3).

(5th Cir.1985)). This means that the document must have been either created for use in pending or impending litigation or intended to generate ideas for use in such litigation.

■ Although it was prepared because of a threatened suit by Gold Standard against appellees, the primary prupose behind creating the June 11 letter was not "to assist in pending or impending litigation." *Id.* There is no indication that the letter or ideas generated by the letter were intended for use in litigation brought by Gold Standard. It outlines a retainer agreement and sets up a plan for allocating costs and burdens among appellees in the event Gold Standard should involve any of them in litigation. The letter does not contain any legal strategies, theories, or conclusions of appellees or their attorneys designed to assist in litigation brought by Gold Standard.[3]

## II. ATTORNEY–CLIENT PRIVILEGE

The attorney-client privilege, codified at Utah Code Ann. § 78–24–8(2) (Supp.1990), provides:

> An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given regarding the communication in the course of his professional employment. An attorney's secretary, stenographer, or clerk cannot be examined, without the consent of his employer, concerning any fact, the knowledge of which has been acquired in his capacity as an employee.

The United States Supreme Court has stated that the purpose of the privilege is to "encourage clients to make full disclosure to their attorneys." *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). The Court cautioned, however, that "since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its pur-

pose. Accordingly it protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Id.* This court has taken a similar view of the privilege, describing it as "necessary in the interest and administration of justice," but noting that the privilege should be "strictly construed in accordance with its object." *Jackson v. Kennecott Copper Corp.,* 27 Utah 2d 310, 495 P.2d 1254, 1257 (1972).

■ The attorney-client privilege is intended to encourage candor between attorney and client and promote the best possible representation of the client. However, the mere existence of an attorney-client relationship "does not ipso facto make all communications between them confidential." *Anderson v. Thomas,* 108 Utah 252, 262, 159 P.2d 142, 147 (1945); *see also Evans v. Evans,* 8 Utah 2d 26, 327 P.2d 260 (1958). Each case must be considered individually to determine whether the communication can be properly considered confidential. *Id.* at 28, 327 P.2d at 261. This court described two common scenarios where the privilege applies in *Jackson v. Kennecott Copper Corp.* These are where the information is given to the attorney (1) "for the purpose of forming an opinion as to the legality of a contemplated legal action" or (2) for "legal analysis and advice as to the particular prospective litigation...." 495 P.2d at 1257.

■ The June 11 letter has essentially two parts: First, it outlines the terms for retaining Parsons, Behle & Latimer by appellees. Second, it describes an agreement among appellees for allocating the costs and burdens of litigation in the event that Gold Standard brings suit against them.

Retainer agreements are not generally protected by the attorney-client privilege. The items commonly contained in them, describing the external trappings of the attorney-client relationship, are not confidential. *See, e.g., In re LTV Securities Litigation,* 89 F.R.D. 595, 603 (N.D.Tex.

---

**3.** The letter contains a paragraph which "deems" the letter work product. Merely labelling a document protected by either the work product doctrine or the attorney-client privilege does not make the document privileged. Any document for which protection from discovery is claimed must be independently analyzed to determine if the privilege actually applies.

1981) ("terms and conditions of an attorney's employment, the purpose for which an attorney has been engaged, [and] the steps which an attorney took or intended to take in discharging his obligation" not protected); *In re Walsh*, 623 F.2d 489, 494, (7th Cir.) *cert. denied sub nom. Walsh v. United States*, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980) (recognizing general rule that matters involving receipt of fees from clients are not protected); *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir.1977) (memo revealing relationship between attorney and client, purposes for which firm was engaged, and steps to meet obligations not protected). Therefore, we hold that the retainer agreement portion of the letter, describing the creation of an attorney-client relationship between appellees and the law firm, is not protected by the attorney-client privilege.

Confidential communications not characteristic of a retainer agreement yet contained therein may be privileged so long as they are independently protected by the aattorney-client privilege. *See Parker v. Kitzhaber*, Civ. No. 88–1089–JU, 1989 WL 69960 (D.Or. June 1989) (Westlaw, Allfeds library). However, the portions of the June 11 letter describing allocation of potential costs among appellees is not covered by the privilege. Communication of the cost-sharing agreement was not related to the purpose for which the attorneys were being hired. There is no indication that appellees presented the information to their attorneys for advice on the legality of the cost-sharing arrangement, and the information was not related to the attorneys' preparation for litigation against Gold Standard. Possibly, the cost-sharing agreement was presented to the attorneys so that the attorneys would be aware of how their fees would be paid should litigation arise.[4] This, however, would offer no basis for application of the attorney-client privilege. We hold that the letter is not protected by the attorney-client privilege.

---

4. Gold Standard argues that appellees sent the letter to the attorneys merely to create a privileged document. Because we hold that the letter does not contain privileged information, we do not address this argument. This court has

The trial court's ruling on the production of the document is reversed.

HALL, C.J., and HOWE, Associate C.J., and ZIMMERMAN, J., concur.

STEWART, J., concurs in the result.

made clear, however, that a party cannot "foreclose the discovery process by [simply] funneling the matter into its counsel's custody." *Jackson v. Kennecott Copper Corp.*, 495 P.2d at 1257.