2008 UT 88

**SOUTHERN UTAH WILDERNESS ALLI-ANCE, a Utah nonprofit corporation; and the Wilderness Society, a District of Columbia nonprofit corporation, Plaintiffs and Appellants,**

v.

**The AUTOMATED GEOGRAPHIC REF-ERENCE CENTER, within the DIVI-SION OF INFORMATION TECHNOL-OGY; and the Utah State Records Committee, Defendants and Appellees.**

No. 20060813.

Supreme Court of Utah.

Dec. 23, 2008.

Joro Walker, David H. Becker, Salt Lake City, for plaintiffs.

Mark L. Shurtleff, Att'y Gen., Roger R. Fairbanks, Bradley C. Johnson, David W. Geary, Asst. Att'ys Gen., Salt Lake City, for defendants.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 The Southern Utah Wilderness Alliance (SUWA) appeals the district court's or-

der affirming the State Records Committee's denial of records sought by SUWA from The Automated Geographic Reference Center (AGRC) pursuant to the Government Records Access and Management Act (GRAMA). The district court denied summary judgment to SUWA and granted summary judgment to the AGRC. We reverse.

## BACKGROUND

¶ 2 The legislature created the AGRC, part of the Division of Integrated Technology (the Division),[1] to provide geographic information system services (GIS)[2] to state agencies, the federal government, local political subdivisions, and private persons under the rules and policies established by the Division. Utah Code Ann. § 63F–1–506 (2008).[3] Section 63F–1–506(2)(c) also requires the AGRC to manage the State Geographic Information Database (the SGID). *Id.*

¶ 3 SUWA seeks records from the AGRC relating to rights-of-way, the ownership of which the State and Emery County. (the County) claim pursuant to the now repealed federal Revised Statute 2477 (R.S. 2477). R.S. 2477 granted rights-of-way for "construction of highways over public lands, not reserved for public uses." Mining Act of 1866, ch. 262, § 8, 14 Stat. 251, 253 (1866), *repealed* by Federal Lands Policy Management Act of 1976, Pub.L. No. 94–579, § 706(a), 90 Stat. 2743 (codified as amended at 43 U.S.C. §§ 1761–71). As this court explained in *Lindsay Land & Live Stock Co. v. Churnos,* 75 Utah 384, 285 P. 646 (1929), with R.S. 2477

> the [federal] government consented that any of its lands not reserved for a public purpose might be taken and used for public roads. The statute was a standing offer

for a free right of way over the public domain, and as soon as it was accepted in an appropriate manner by the agents of the public, or the public itself, a highway was established.

*Id.* at 648 (quoting *Streeter v. Stalnaker,* 61 Neb. 205, 85 N.W. 47, 48 (1901)). Then, in 1976, the federal government shifted its land use policy to favor federal retention of public lands rather than development and private ownership of such lands. *S. Utah Wilderness Alliance v. Bureau of Land Mgmt.,* 425 F.3d 735, 740–41 (10th Cir.2005). That year Congress repealed R.S. 2477 with the Federal Lands Policy Management Act, but preserved rights-of-way established before October 21, 1976. *See* Federal Lands Policy Management Act of 1976, Pub.L. No. 94–579, · § 706(a), 90 Stat. 2743 (codified as amended at 43 U.S.C. §§ 1761–71). Today, the identification of routes that are valid R.S. 2477 rights-of-way, established prior to October 1976, is an ongoing controversy.

¶ 4 The State of Utah and many of its local municipalities[4] have been at the heart of this controversy because a high percentage of public land in Utah is owned by the federal government. Accordingly, the State and counties have alleged numerous rights-of-way that run through undeveloped federal lands that might otherwise qualify for wilderness designation, across now privately held lands, or within federal parks or forests created after the rights-of-way were allegedly established.

¶ 5 To protect alleged R.S. 2477 rights-of-way, the Utah Legislature enacted several pieces of legislation. First, in 1978 the legislature passed legislation that requires each county to prepare and file maps with the

---

1. The AGRC was previously housed in the Division of Information Technology Services, as indicated in the caption of this case. *See* Utah Code Ann. §§ 63A–6–201 to –202 (2004). In 2005, the Utah Technology Government Act reorganized the executive branch's technology services and reassigned the AGRC to the new Division of Integrated Technology. *See* 2005 Utah Laws 1136.

2. "'Geographic information system' or 'GIS' means a computer driven data integration and map production system that interrelates dispa-

rate layers of data to specific geographic locations." Utah Code Ann. § 63F–1–502 (2008).

3. In 2005, the legislature renumbered this provision from 63A–6–202 to 63F–1–506, but made no substantive changes to sections relevant to this opinion; therefore, we refer to the renumbered citation throughout this opinion. *See* 2005 Utah Laws 1167.

4. The State and counties jointly own all R.S. 2477 rights-of-way within the state. Utah Code Ann. § 72–5–103(2)(b) (2001).

Utah Department of Transportation identifying "roads within its boundaries which were in existence as of October 21, 1976." 1978 Utah Laws 27 (codified at Utah Code Ann. § 72–3–105(5) (2001)). Then in 1993, the Utah Legislature passed the Rights–of–Way Across Federal Lands Act. H.B. 6, 50th Leg.2d Special Sess., 1994 Utah Laws 34, (codified as amended at Utah Code Ann. §§ 72–5–301 to –307 (2001 & Supp.2008)) [5]. The Act codified existing law regarding R.S. 2477 rights-of-way and also included provisions addressing mapping and record gathering. *Id.* Particularly, the Act required the AGRC to "create and maintain a record of R.S. 2477 rights-of-way on the Geographic Information Database." Utah Code Ann. § 72–5–304(3)(a). Finally, in 2003, the Rights–of–Way Across Federal Lands Act was amended to indicate that acceptance of an R.S. 2477 right-of-way vests title in the State and municipal body, and further amended the Act's definitions. 2003 Utah Laws 1368 (codified at Utah Code Ann. § 72–5–308 to –310 (Supp.2008)).

¶ 6 In addition to the legislative efforts to preserve R.S. 2477 rights-of-way, the State and several counties have been involved in litigation regarding alleged rights-of-way. The State and Garfield County have been involved in suits with both the federal government and environmental groups regarding the scope of an R.S. 2477 right-of-way on the Burr Trail. *See Sierra Club v. Lujan,* 949 F.2d 362 (10th Cir.1991); *Sierra Club v. Hodel,* 848 F.2d 1068 (10th Cir.1988), *overruled on other grounds by Vill. of Los Ranchos de Albuquerque v. Marsh,* 956 F.2d 970, 973 (10th Cir.1992) (en banc). On June 14, 2000, the State of Utah, on behalf of itself and its counties, notified the U.S. Department of the Interior, via a Notice of Intention to File Suit (Notice of Intent), that it would be filing a quiet title action regarding the ownership and scope of routes located throughout Utah, which it claimed the State and counties acquired pursuant to R.S. 2477.

On August 31, 2004, the State and Emery County filed another Notice of Intent indicating that they intended to sue to claim ownership of ten rights-of-way in Emery County. The State and County filed an amended Notice of Intent on November 3, 2004.

### SUWA's GRAMA Record Request

¶ 7 In October of 2004, SUWA sent a letter to the Governor and the attorney general's office, pursuant to GRAMA, requesting "all records" concerning certain routes over public lands in Emery County that the State and County claim as R.S. 2477 rights-of-way. In particular, the request sought photographs, GIS Arc/Info coverages or shapefiles, email and telephone communications, affidavits, declarations, maintenance and funding records, and notes relating to the routes referenced in the State of Utah's Notice of Intent filed with the U.S. Department of the Interior in 2000. The attorney general's office released some documents, such as maintenance agreements, but withheld most of the requested records, arguing that under GRAMA the records were protected from disclosure.

¶ 8 Subsequently, on December 2, 2004, SUWA submitted a record request to the AGRC. This request was more specific than the request to the Governor and Attorney General and many of the records related to information contained in the SGID. Specifically, SUWA requested the following documents:

1. Any and all maps and GIS data (or other electronic data) depicting Class D roads [6] in Emery County which were in existence as of October 21, 1976....

2. Any and all maps and GIS data (or other electronic data) depicting Class D roads in Emery County which were established or constructed after October 21, 1976....

3. Any and all maps, GIS data (or other electronic data) and/or information con-

---

5. Since the initiation of this case, the legislature has amended the Rights–of–Way Across Federal Lands Act. 2005 Utah Laws 676, 1171. However, no substantive changes were made to the provisions relevant to this case; therefore, we cite the most recent codification of the Act.

6. Class D roads include any route that has been "established by use or constructed and has been maintained" for public use by four-wheel vehicles, but are not state highways, county roads, or city streets. Utah Code Ann. § 72–3–105.

tained in or by the [SGID] depicting, in any way, "R.S. 2477 rights-of-way" in Emery County....

4. Any and all records or information, dated prior to June 14, 2000, including "cartographic, topographic, photographic, historical, and other data" available to the [AGRC] and/or contained in or maintained by the [SGID] and/or the [AGRC] relating to, in any way, "R.S. 2477 rights-of-way" in Emery County....

5. Any and all records or information, dated on or after June 14, 2000 but before August 31, 2004, including "cartographic, topographic, photographic, historical, and other data" available to the [AGRC] and/or contained in or maintained by the [SGID] and/or the [AGRC] relating to, in any way, "R.S. 2477 rights-of-way" in Emery County....

6. Any and all records or information, dated prior to June 14, 2000 provided to the [AGRC] by any agencies and/or political subdivisions of the state relating in any way to "R.S. 2477 rights-of-way" in Emery County.

7. Any and all records or information, dated on or after June 14, 2000, provided to the [AGRC] by any agencies and/or political subdivisions of the state relating in any way to "R.S. 2477 rights-of-way" in Emery County.

8. Any photographs, including aerial or on-the-ground photographs, or any digital or electronic photographs or similar media, taken prior to, or depicting conditions prior to June 14, 2000, of or depicting the ... routes in Emery County identified by the State of Utah in its notice of intent to sue of August 31, 2004....

9. The current plats and specific descriptions of the county roads in Emery County and any electronic or GIS data relating in any way to these plats and descriptions....

10. Any oral histories or similar historical accounts, prepared prior to June 14, 2000, relating in any way to the [alleged] routes in Emery County....

11. Any and all correspondences, including emails, and any records relating to correspondences, including emails and tele-

phone calls with and from the United States Department of Interior and any of its subdivisions, ... related in any way to roads, including Class A–D roads, and R.S. 2477 rights-of-way in Emery County.... (footnote added).

*The AGRC's Denial of SUWA's Request*

¶ 9 On December 31, 2004, the AGRC responded to SUWA with a denial of all requests. First, the AGRC indicated that it did not have records responsive to SUWA's request for records of Class D roads existing in Emery County prior to 1976. The AGRC also indicated that it did not have records responsive to SUWA's request for plat descriptions of county roads in Emery County, or oral histories or correspondence and communication with the federal government relating to the routes named in the 2004 Notice of Intent. The AGRC also explained that it could not copy the maps requested of Class D roads existing after 1976, but that such records could be obtained from the Department of Transportation. In response to SUWA's request for GIS information, AGRC records, and SGID data, the AGRC provided the following responses.

(1) SUWA's request to the AGRC unreasonably duplicated SUWA's request to the Governor and Attorney General.

(2) The SGID does not isolate rights-of-way in Emery County, except for the ten roads identified in the 2004 amended Notice of Intent; and, these records are protected as "not public" and as "drafts."

(3) The requested records were prepared in anticipation of litigation and therefore are protected as work product and privileged communications.

(4) Release of requested records could interfere with the state and counties' investigation and enforcement of its R.S. 2477 rights.

¶ 10 In addition, the AGRC indicated that it had been involved in negotiations with the federal government regarding the quiet title action described in its Notice of Intent. It also notified SUWA that a state court in a case where similar records were requested had found that the records were "private,

controlled, or protected, information." Finally, the AGRC noted in its response that it maintains a "public" SGID, which does not designate rights-of-way as R.S. 2477 rights-of-way, but is available to the public through the AGRC's website.

## PROCEDURAL HISTORY

¶ 11 Following the denial by the AGRC, SUWA appealed to Dennis Goreham, the AGRC manager. Mr. Goreham did not respond; therefore, SUWA appealed the AGRC's denial to the State Records Committee. The State Records Committee conducted a hearing and denied SUWA's appeal holding that the AGRC properly categorized the documents as private and protected because they were work product prepared in anticipation of litigation. SUWA then filed a petition seeking judicial review pursuant to Utah Code section 63G–2–404 (2008). Following a hearing on cross-motions for summary judgment, the district court denied SUWA's motion and granted the AGRC's motion for summary judgment. Specifically, the district court found that the statutes creating the AGRC and the GIS database are "silent as to the access to the RS2477 database." Thus, looking to the legislative history, the court found that "the database for the RS2477 roads was in fact established solely for litigation support, or litigation purposes." As a result, the district court held that the requested records were protected as work product and as attorney-client privileged communications under Utah Code sections 63G–2–305(16) to (18). Therefore, the district court denied SUWA's motion and granted the AGRC's motion for summary judgment. SUWA brought this appeal. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(b).[7]

## STANDARD OF REVIEW

¶ 12 In reviewing a district court's grant of summary judgment, we afford no deference to the lower court's legal conclusions and review them for correctness.

*Schaerrer v. Stewart's Plaza Pharmacy, Inc.,* 2003 UT 43, ¶ 14, 79 P.3d 922; *Blackner v. State,* 2002 UT 44, ¶ 8, 48 P.3d 949. Granting summary judgment is appropriate only in the absence of any genuine issue of material fact and where the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c); *Crestwood Cove Apartments Bus. Trust v. Turner,* 2007 UT 48, ¶ 10, 164 P.3d 1247. Thus, in reviewing a district court's grant of summary judgment, we review the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Sur. Underwriters v. E & C Trucking, Inc.,* 2000 UT 71, ¶ 15, 10 P.3d 338.

¶ 13 Although the AGRC argues in its brief that the district court exercised discretionary powers in making its decision, requiring us to use an abuse of discretion standard, we conclude that the district court's ruling was in fact premised on its interpretations of the meaning and applicability of the provisions of GRAMA. Because the interpretation of statutes is a question of law, we review the district court's conclusions for correctness. *Rushton v. Salt Lake County,* 1999 UT 36, ¶ 17, 977 P.2d 1201.

## ANALYSIS

¶ 14 The arguments presented to this court greatly reflect those raised below. SUWA argues that the district court erred when it held that the requested records were exempt from disclosure because they were prepared solely in anticipation of litigation. Instead, SUWA argues, the items requested are public records and should be disclosed because they do not fall under any of the exemptions provided for in GRAMA. Further, SUWA argues that the public's interest in the records' disclosure outweighs any interest favoring nondisclosure. In contrast, the AGRC argues that the district court correctly held that the AGRC need not disclose the requested records. First, the AGRC argues that the Rights–of–Way Across Federal Lands Act's requirement to collect R.S. 2477

---

7. This case was originally accepted by the Utah Supreme Court. However, pursuant to Utah Code section 78A–4–103(2)(a), the Utah Court of Appeals had proper jurisdiction. To correct this error, the supreme court transferred the case to the court of appeals, which then certified it to the Utah Supreme Court, pursuant to 78A–4–103(3).

data does not create a public record under the definitions of GRAMA. Second, the AGRC argues that such records, if public, were created in anticipation of litigation and thus are protected as work product and privileged attorney-client communications. Third, according to the AGRC, SUWA's request to the AGRC unreasonably duplicated its request to the Governor and attorney general's office. Finally, the AGRC argues that the requested records need not be disclosed under GRAMA because they are drafts.[8]

¶ 15 As discussed below, we hold that the district court erred by not requiring disclosure of the requested records. First, the statutes requiring the records' creation do not categorize them as nonpublic; therefore, the records are public and governed by GRAMA. Second, the records do not satisfy any of the criteria for exemption under GRAMA, including the exemptions for records prepared in anticipation of litigation such as work-product and privileged communications, draft documents, or unreasonable duplication. We address each point separately below. Because we hold that the AGRC must disclose the requested records, we decline to engage in an inquiry as to whether the public's interest in disclosure surpasses the AGRC's interest in nondisclosure.

## I. THE REQUESTED RECORDS ARE PUBLIC

¶ 16 The AGRC begins its argument by stating that the records it maintains are not public under GRAMA because a plain reading of Utah Code section 72–5–304(3) does not so characterize them. However, the question is not whether the records maintained by the AGRC are public, because they presumptively are, but whether they remain public in the face of a conflicting state statute.

¶ 17 Under GRAMA "[a] record is public unless otherwise expressly provided

by statute." Utah Code Ann. § 63G–2–201(2) (2008). Further, GRAMA provides that it governs disclosure of government records, unless another statute's categorization of a record or limitations on disclosure of the record directly conflict with GRAMA. Utah Code Ann. § 63G–2–201(6). So "[w]hile the other statute's 'specific provisions' will control in the event of an irreconcilable conflict, GRAMA's provisions will still apply so long as they are 'not inconsistent with the [other] statute.'" *Utah Dep't of Pub. Safety v. Robot Aided Mfg. Ctr., Inc.*, 2005 UT App 199, ¶ 11, 113 P.3d 1014 (alteration in original) (quoting Utah Code Ann. § 63–2–201(6)(b)). In this case, we examine two statutes for any express categorization of the requested records as nonpublic or other requirements for or limitations on disclosure that directly conflict with GRAMA. We first address section 63F–1–506, which created the AGRC; then we address section 72–5–304(3), which specifically mandates the creation and maintenance of records related to R.S. 2477 rights-of-way on the SGID.

¶ 18 In construing statutes, this court looks to the statute's plain language to "discern the legislative intent," *Gohler v. Wood,* 919 P.2d 561, 562–63 (Utah 1996), by giving the words of the statute their "plain, natural, ordinary, and commonly understood meaning." *State v. Navaro,* 83 Utah 6, 26 P.2d 955, 956 (1933). Only where such a reading renders the statute ambiguous will we look beyond its plain language. *See Gohler,* 919 P.2d at 563; *see also World Peace Movement of Am. v. Newspaper Agency Corp.,* 879 P.2d 253, 259 (Utah 1994).

¶ 19 First, section 63F–1–506(2) requires the AGRC to "provide geographic information system services to state agencies . . ., [the] federal government, local political subdivisions, and private persons" pursuant to the rules and policies established by the Division of Integrated Technology; manage the SGID; and establish a standard format,

---

8. In its original response to SUWA's request, the AGRC indicated that disclosure of the requested records could interfere with the State's investigations relating to proceedings in which it seeks to enforce its R.S. 2477 rights. The AGRC also mentioned that it had engaged in settlement ne-

gotiations with the federal government. However, these arguments were not addressed by the State Records Committee or district court's orders and were not raised by the AGRC in this appeal. Therefore, these arguments are not addressed by this court.

lineage, and other requirements for the database. Utah Code Ann. § 63F–1–506(2). This language does not purport to restrict any information maintained by the AGRC, but rather mandates that the AGRC provide its information to both government agencies and private persons. This provision does not expressly classify the records as nonpublic and does not conflict with GRAMA provisions and, therefore, does not bar GRAMA's application.

■ ¶ 20 Next, we turn to Utah Code section 72–5–304. This section requires the AGRC to "create and maintain a record of R.S. 2477 rights-of-ways on the Geographic Information Database," that "shall be based on information maintained by the Department of Transportation and ... other data available to or maintained by [the AGRC]," as well as information regarding R.S. 2477 rights-of-way, provided by agencies and political subdivisions of the state when such information is available. Utah Code Ann. § 72–5–304(3) (Supp.2008). Again, the plain language of this provision does not purport to restrict access to any information maintained by the AGRC related to R.S. 2477 rights-of-way, nor does it conflict with the provisions of GRAMA.

¶ 21 Hence, we conclude that neither of these statutes contain any language designating records maintained by the AGRC as nonpublic or restricting access to them. Therefore, GRAMA's presumption that the government records are public remains intact, and GRAMA's provisions govern their disclosure. Based on this determination, we move to an analysis of the exemptions claimed by the AGRC under GRAMA to determine whether the AGRC may restrict disclosure of the public records.

## II. THE REQUESTED RECORDS DO NOT MEET GRAMA'S CRITERIA FOR EXEMPTION FROM DISCLOSURE

¶ 22 The AGRC has argued that the records sought by SUWA are protected under numerous exemptions from the disclosure requirements contained in GRAMA. Specifically, the AGRC claims that the records are exempt because (A) they are work product

created and maintained "solely in anticipation of litigation" and reflect mental impressions and legal theories and therefore are protected under section 63G–2–305(16) and (17); (B) they were created to support the Attorney General's legal representation of the State and the County, and therefore are protected as privileged, attorney-client communications; (C) they are drafts within the meaning of section 63G–2–305(22); and (D) SUWA's request for them was an unreasonable duplication of its earlier request to the attorney general's office. We treat each of these arguments in turn.

### A. The Records Maintained by the AGRC Pursuant to Section 72–5–304(3) Are Not Work Product; Therefore, They Are Not Exempt Under Section 63G–2–305(16) and (17) of GRAMA

¶ 23 The protections provided by section 63G–2–305(16) and (17) are nearly identical to the protection provided by both the Federal and Utah Rules of Civil Procedure rule 26(b)(3), widely referred to as the work-product doctrine. *See generally Gold Standard, Inc. v. Am. Barrick Res. Corp.*, 805 P.2d 164, 169–70 (Utah 1990) (applying Fed.R.Civ.P. 26(b)(3) and setting forth a three-part test for work product: "1) documents and tangible things otherwise discoverable, 2) prepared in anticipation of litigation or for trial, 3) by or for another party or by or for that party's representative") [hereinafter *Gold Standard I*]. Therefore, in interpreting GRAMA's work product protections, we are informed by the case law interpreting the state and federal procedural protections for work product.

¶ 24 The work-product doctrine can be divided into two sections. The Third Circuit explained it this way:

Fed.R.Civ.P. 26(b)(3) establishes two tiers of protection: first, work prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship; second, "core" or "opinion" work product that encompasses the mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning

the litigation is generally afforded near absolute protection from discovery. Thus, core or opinion work product receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances.

*In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir.2003) (citations and internal quotation marks omitted). Similarly, GRAMA incorporates the two-tier approach by protecting government records containing the first tier of work product with section 63G–2–305(16) and government records containing the second tier of work product with section 63G–2–305(17). The AGRC argues that the requested records are protected under both tiers; accordingly, we address each argument in turn.

1. The requested records were not prepared in anticipation of litigation

¶ 25 Utah Code section 63G–2–305(16) protects "records prepared by or on behalf of a governmental agency solely in anticipation of litigation that are not available under the rules of discovery." Utah Code Ann. § 63G–2–305(16) (2008). Central to our inquiry in this case is whether the requested records were prepared *in anticipation of litigation*—as required by both Utah Code section 63G–2–305(16) and rule 26(b)(3). This court has long held that for a document to be properly characterized as "prepared in anticipation of litigation" it must have been prepared primarily for use in pending or imminent litigation. *See generally Gold Standard I*, 805 P.2d at 170 (stating that inquiry should focus "on the primary motivating purpose behind the creation of the document") (internal quotation marks omitted). That is, protection for work product extends only to " 'material that would not have been generated but for the pendency or imminence of litigation.' " *Madsen v. United Television, Inc.*, 801 P.2d 912, 917 (Utah 1990) (quoting *Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D.Cal.1987)). The GRAMA exception uses language arguably sug-

gesting an even higher standard, requiring that the record be prepared *"solely"* for litigation use. In any event, this requirement excludes all documentation produced in the ordinary course of business. *See* Fed. R.Civ.P. 26(b) advisory committee's note ("Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision."). A document is prepared in the ordinary course of business when it is created pursuant to routine procedures or public requirements unrelated to litigation. *See Soter v. Cowles Publ'g Co.*, 131 Wash.App. 882, 130 P.3d 840, 846 (2006) ("The work product doctrine does not shield records that a party would have generated pursuant to 'ordinary course of business' administrative procedures even without the prospect of litigation."). Further, "[a]cts performed by a public employee in the performance of his official[ ] duties are not 'prepared in anticipation of litigation or for trial' merely by virtue of the fact that they are likely to be the subject of later litigation"; instead they are performed in the ordinary course of business. *Indiana Bd. of Pub. Welfare v. Tioga Pines Living Ctr.*, 592 N.E.2d 1274, 1277 (Ind.Ct.App.1992) (citing *Grossman v. Schwarz*, 125 F.R.D. 376, 388 (S.D.N.Y.1989)).

¶ 26 The AGRC argues that the records requested by SUWA were created in anticipation of litigation, if not solely for litigation, because the AGRC assisted the attorney general's office in compiling data regarding potential R.S. 2477 rights-of-way. However, the AGRC's argument cannot prevail in view of the fact that the records in question are precisely those the statute requires it to create and maintain. *See* Utah Code Ann. § 72–5–304(3) (Supp.2008).[9] In this case, absent any litigation, the AGRC's duties regarding the SGID would be the same; those duties exist entirely independent of such litigation. The AGRC's records are created in the ordinary course of its business pursuant

---

**9.** In reaching its decision, the district court reviewed affidavits submitted by Mr. Goreham, the manager of the AGRC, detailing how the AGRC provides litigation support to the attorney gener-

al's office. Because we decided the question of disclosure under legal grounds, we need not undertake an analysis of Goreham's affidavit.

to its statutory mandates. Their mere use in litigation does not render them exempt under GRAMA.

¶ 27 The AGRC urges us to examine the legislative history of section 72–5–304(3), arguing that the intent of the statute was to create R.S. 2477–related records solely for the purpose of supporting litigation against the federal government. A review of the plain language of the statute uncovers no reference whatsoever to litigation or to enforcement of rights associated with the subject of R.S. 2477. Thus, we would not ordinarily consider arguments about legislative history. In this instance, however, the AGRC urges that we must consider the overall statutory scheme, in which the R.S. 2477 database was separately added on to the AGRC's other record-compilation duties, in the context of legislative concern about these particular rights. The AGRC argues that the legislature established the R.S. 2477 database solely for the support of anticipated litigation. As noted, there is nothing in the language of any of the relevant statutes suggesting such intent, and our review of the legislative context and history, set forth extensively in the briefs of both parties, does not persuade us that it can or should be inferred. Indeed, as SUWA argues in its brief, the legislative history of section 72–5–304 reinforces the plain language of the statute: it directs the AGRC to maintain R.S. 2477 records for the benefit of multiple users, for purposes related to relieving counties of record-keeping burdens, supporting congressional lobbying efforts, and preparing for state participation in impending federal rulemaking, and not solely, or even mainly, for anticipated litigation. We also note, and the AGRC acknowledges in the record, that the records at issue will generally be discoverable in the course of litigation, and therefore do not meet the second requirement for exemption under section 63G–2–305(16). Therefore, we conclude that the records in question do not fall under the first tier of work-product protection and are not exempt pursuant to section 63G–2–305(16).

2. The requested records do not reflect mental impressions or legal theories

¶ 28 Utah Code section 63G–2–305(17) also codifies the work-product doctrine, but focuses on the second tier of work product—opinion work product—by protecting "records disclosing an attorney's work product, including the mental impressions or legal theories of an attorney or other representative of a governmental entity concerning litigation." Utah Code Ann. 63G–2–305(17) (2008). Under Utah law, opinion work product, which includes "mental impressions, conclusions, opinions or legal theories of an attorney or party," is afforded higher protection than fact work product. *Gold Standard I*, 805 P.2d at 168.

¶ 29 However, to utilize the privilege, " '[t]he party seeking to assert the . . . work product privilege as a bar to discovery has the burden of establishing that [such] is applicable.' " *McEwen v. Digitran Sys., Inc.*, 155 F.R.D. 678, 683 (D.Utah 1994) (quoting *Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir.1984)); *see also Askew v. Hardman*, 884 P.2d 1258, 1261 (Utah Ct.App. 1994), *rev'd on other grounds*, 918 P.2d 469 (Utah 1996) ("The party asserting work-product protection must demonstrate that the documents were created to assist in pending or impending litigation."). And, "[a] blanket assertion that the work-product doctrine applies is insufficient to meet that burden. For the work-product doctrine to apply, the asserting party must show that the documents or materials were prepared in anticipation of litigation by or for a party or that party's representative." *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 651 (D.N.M. 2007). As the AGRC argues, opinion work product is typically evident on its face. Thus, "[m]aking an *in camera* submission of materials that counsel contends are privileged is a practice both long-standing and routine in cases involving claims of privilege." *In re Grand Jury Subpoena*, 510 F.3d 180, 184 (2d Cir.2007) (internal quotation marks omitted).

¶ 30 In this case, the AGRC argues that disclosing the requested records at issue—Arc/Info computer data, aerial photographs, and digital photographs—will reveal the State and County's litigation strategy. First, the State and County argue that requested

records contain comments regarding the nature of the various rights-of-way, and therefore should be protected as opinion work product. Further, the AGRC argues that by disclosing such documents, the State will be divulging the areas on which the State and County are focusing their litigation efforts and their methods of documenting the alleged rights-of-way. That is, by disclosing the requested records, the State will be divulging the focus of the attorney general's fact collection, as well as how it organized such data in the SGID. To support this argument, the AGRC provided the requested records to the court to review in camera.

¶ 31 Upon review of the records produced by the AGRC, we find no evidence of opinion work product. First, as indicated in the prior argument, we find that the R.S. 2477 database was not created in anticipation of litigation, but instead pursuant to a legislative mandate that required its creation notwithstanding any litigation. Thus, the AGRC's argument that the order in which the database is organized and the information contained therein is opinion work product fails. Any litigation strategy that it divulges is coincidental to its statutory requirements, and frankly may reflect a failure of the AGRC to create a comprehensive database. Second, upon reviewing the records produced in camera, this court is unable to discern any comment reflecting mental impressions, conclusions, or legal theories of the attorney general's office or its agents. The AGRC argues that these comments are imbedded into the metadata in the database. However, as the AGRC failed to provide the court with a readable format or method by which to review the metadata, the court cannot determine whether such comments exist and whether they constitute opinion work product. Therefore, the AGRC has failed to meet its burden to prove the existence of the opinion work product privilege. Thus, we find that the requested records are not protected as opinion work product under section 63G–3–305(17).

*B.* *Records Maintained by the AGRC Pursuant to Utah Code Section 72–5–304(3) Are Not Privileged Communications Between a Governmental Entity and an Attorney, and Therefore, Are Not Exempt Under Section 63G–2–305(18) of GRAMA*

¶ 32 Section 63G–2–305(18) protects "records of communications between a governmental entity and an attorney representing, retained, or employed by the governmental entity if the communications would be privileged as provided in Section 78B–1–137." Utah Code Ann. § 63G–2–305(18). By referencing section 78B–1–137, which protects "any communication made by the client to [his attorney] or [the attorney's] advice given regarding the communication in the course of his professional employment," *id.* § 78B–1–137(2), this section of GRAMA incorporates the statutory and common law attorney-client privilege protection for government records. *See Gold Standard, Inc. v. Am. Barrick Res. Corp.,* 801 P.2d 909, 911 (Utah 1990) [hereinafter *Gold Standard II* ].[10] This court has held that regardless of the statutory source, the privilege is the same. *Doe v. Maret,* 1999 UT 74, ¶ 7, 984 P.2d 980, *overruled in part by Munson v. Chamberlain,* 2007 UT 91, ¶¶ 20–21, 173 P.3d 848 (overruling *Maret's* holding that all documents submitted to a prelitigation panel are confidential). Thus, we rely on our prior interpretations of both 78B–1–137 and rule 504 to interpret this exemption from GRAMA.

¶ 33 The attorney-client privilege protects information given by a client to an attorney that is "necessary to obtain informed legal advice—which might not have been made absent the privilege." *Gold Standard II,* 801 P.2d at 911 (quoting *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)); *see also Jackson v. Kennecott Copper Corp.,* 27 Utah 2d 310, 495 P.2d 1254, 1256 (1972). In addition, the communication must be confidential. Utah R. Evid. 504 ("A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal ser-

---

**10.** The attorney-client privilege is also codified in Utah Rules of Evidence 504.

vices....").  And, "the mere existence of an attorney-client relationship 'does not ipso facto make all communications between them confidential.' " *Gold Standard II,* 801 P.2d at 911 (quoting *Anderson v. Thomas,* 108 Utah 252, 159 P.2d 142, 147 (1945)).  Thus to rely on the attorney-client privilege, a party must establish: (1) an attorney-client relationship, (2) the transfer of confidential information, and (3) the purpose of the transfer was to obtain legal advice.

¶ 34 The AGRC argues that the information requested meets all three requirements.  First, the AGRC notes that the attorney general's office represents the AGRC pursuant to statute, and therefore an attorney-client relationship exists.  Additionally, the AGRC suggests that it is also included in the contractual, attorney-client relationship between the attorney general's office, the State, and Emery County "because all the entities are working together in the R.S. 2477 project with the Attorney General as their attorney."  Second, the AGRC argues that the requested records are confidential communications because they are information exchanged between the AGRC, the State, and the County.  The AGRC also points to the litigation agreement between the attorney general's office, the State, and the County, which requires the parties to keep all records and information regarding the R.S. 2477 project confidential.  Finally, the AGRC argues that the records were created and exchanged "for the purpose of determining valid R.S. 2477 rights-of-way in Emery County and litigating those rights-of-way."  The AGRC's argument seems to suggest that it is the agent of the attorney general's office and that it created the R.S. 2477 records in the SGID as a result of the attorney general office's representation of the State and the County.  That is, the AGRC seems to assert that because the information sought by SUWA and maintained by the AGRC relates to the rights-of-way in the County at issue in litigation, that information becomes privileged by virtue of coming, at some point, into the possession of the Attorney General as attorney for the County.  We are not persuaded.

¶ 35 Despite the arguments urged by the AGRC, the records requested are not protected by the attorney-client privilege.  First, the AGRC cannot rely on the relationship between the attorney general's office and the State and County.  The AGRC is not a party to the litigation agreement that creates the contractual, attorney-client relationship.  Thus, the information provided to the AGRC was not subject to an attorney-client relationship regarding R.S. 2477 litigation.  Instead it was provided by municipal bodies to a nonlegal state agency, without the purpose of seeking legal advice.  The AGRC, however, seems to argue that it is an agent to the attorney general's office, or the custodian of its records, and therefore, the records were created and stored at the direction of the attorney general's office as part of its representation of the State and County in R.S. 2477 litigation.  However, the AGRC ignores the fact that its collection and maintenance of information provided by state agencies or political subdivisions (including the County) is merely the performance of its statutory duty for the benefit of the State and federal agencies, as well as private persons.  The AGRC's duties do not extend to the preparation of records for litigation support.  Thus, the records housed in the SGID, including the R.S. 2477 records, are also not confidential as they are created for the benefit of a host of agencies and the public.  As discussed in Section I, the records are presumptively public, and the AGRC's refusal to disclose them does not make them confidential.  Finally, the records were not created for the purpose of providing or seeking legal advice.  As we have thoroughly discussed, the records are created pursuant to a statutory requirement, not pursuant to the attorney general's office's or the counties' involvement in R.S. 2477 litigation.  True, the AGRC did provide the records to the attorney general's office and to the Attorney General's clients.  However, "channeling work through a lawyer" does not by itself create a basis for attorney client privilege.  *See Anaya v. CBS Broad., Inc.,* 251 F.R.D. at 650 (citing *Burton v. R.J. Reynolds Tobacco Co.,* 170 F.R.D. 481, 485 (D.Kan.1997)).

¶ 36 Thus, we reject AGRC's position that the information it received from other state

agencies and political subdivisions, pursuant to section 72–5–304(3), is privileged information.

C. *Records Maintained by the AGRC Pursuant to Section 72–5–304(3) Are Not Temporary Drafts; Therefore They Are Not Exempt Under Section 63G–2–103(22)(b)(ii) of GRAMA*

¶ 37 Utah Code section 63G–2–103(22)(b)(ii) provides that the definition of a record does not include "temporary drafts or similar materials prepared for the originator's personal use." Utah Code Ann. § 63G–2–103(22)(b)(ii). The AGRC contends that the data sought by SUWA are temporary drafts because they were prepared to be used in the Attorney General's strategy development on the issue of R.S. 2477 rights-of-way. We conclude that the data maintained by the AGRC are records, not drafts. Section 72–5–304(3) itself labels what the AGRC maintains on the SGID records when it states that the AGRC shall create and maintain a *record* of R.S. 2477 rights-of-way on the SGID. Thus, the data maintained by the AGRC are records.

¶ 38 Moreover, section 63G–2–103(22)(b)(ii) states that the definition of a record does not include temporary drafts or materials prepared for the *originator's personal use.* It is our opinion that the data maintained by the AGRC may not be considered temporary drafts in the hands of a third-party user of the information. In other words, any information maintained by the AGRC is characterized as a record as defined in Utah Code section 63–2–103(22); it cannot be considered a temporary draft in the hands of the final user of the records because that user is not the originator. Labeling the data on the SGID as temporary drafts would be equivalent to a determination that the entire database is comprised of only temporary drafts, given that new data will continuously be added to the database. Such a determination would clearly undermine the provisions of sections 72–5–304(3), 63F–1–506, and GRAMA, because it would result in near total restriction of access. Therefore, we hold that the data maintained by the AGRC are records, not temporary drafts.

D. *SUWA's GRAMA Request to the AGRC Did Not Unreasonably Duplicate a Prior GRAMA Request Pursuant to Section 63G–2–201(8)(a)(iv); Therefore, the AGRC Is Required to Fulfill SUWA's GRAMA Request*

¶ 39 Utah Code section 63G–2–201(8)(a)(iv) [11] provides that, "[i]n response to a request, a governmental entity is not required to fulfill a person's records request if the request unreasonably duplicates prior records requests from that person.…" Utah Code Ann. § 63G–2–201(8)(a)(iv). The AGRC argues that because an initial records request regarding R.S. 2477 roads in Emery County was made by SUWA to the Governor and the attorney general's office, the AGRC properly denied the subsequent request because the AGRC is an agent of the Attorney General. We disagree.

¶ 40 In the plain language of section 63G–2–201(8)(a)(iv), a records request is unreasonably duplicated where a subsequent request is made to a governmental entity after the initial records request has been granted, denied, or has been adequately responded to by the *same* governmental entity [12] pursuant to Utah Code section 63G–2–204. *See id.* § 63G–2–204. [13]

¶ 41 SUWA's records request to the AGRC was not a subsequent request made to the same agency. First, the AGRC's argument

---

11. This section was originally codified as Utah Code section 63G–2–103(8)(c) (2004) at the time this claim arose. It is now renumbered as Utah Code section 63G–2–201(8)(a)(iv). Because there are no substantive differences between the original version and the renumbered version, we will refer to the renumbered version throughout this opinion.

12. Utah Code section 63G–2–103(11)(a)(i) includes executive department agencies of the state in its definition of governmental entities. Utah Code Ann. § 63G–2–103(11)(a)(i). Section 63G–2–103(11)(b) states that governmental entity means "every office, agency, board, bureau, committee, department … of an entity listed in Subsection (11)(a)." *Id.* § 63G–2–103(11)(b).

13. This section provides the process for requesting information and time limits for responses to such requests.

that the AGRC and the governor's office are one governmental entity does not pass muster. The AGRC seems to suggest that all agencies, offices, or departments within the executive branch can be categorized as one governmental agency, and thus a request to one is equivalent to a request to all. This suggestion undermines the purpose of the statute and defies common sense. The AGRC is a separate statutory entity, charged with the duty to create and maintain records for the state and federal governments, state political subdivisions, and private parties. The Attorney General on the other hand is a legal adviser to state officers. Besides, section 63G–2–201(8)(a) refers to *a governmental entity* as opposed to simply *the government,* making it clear that the statute never intended to treat all governmental agencies in the state of Utah as one unit. Second, the AGRC is not an agent of the Attorney General; instead, the AGRC was created within the Division of Integrated Technology. *Id.* § 63F–1–506(1).[14] Therefore, SUWA's records request to the AGRC after the denial of its request to the Attorney General was not a duplicate request to the same governmental entity.

¶ 42 Moreover, it would be unduly restrictive for us to conclude that a record request to a separate governmental entity is unreasonably duplicated whenever an initial request has been merely "responded" to pursuant to section 63G–2–204(3), since the initial request may have been submitted to a governmental entity that does not even possess or maintain the records sought.

¶ 43 Therefore, SUWA's request to the AGRC did not unreasonably duplicate a prior GRAMA request, and the AGRC is not excused from fulfilling the GRAMA request.

## CONCLUSION

¶ 44 We reiterate that the AGRC is primarily governed by Utah Code section 63F–1–506, which specifically created its duties, with additional duties relating to rights-of-way established by Utah Code section 72–5–304(3). The records sought by SUWA and maintained by the AGRC pursuant to both

sections are public records under GRAMA. Further, the records were not created in anticipation of litigation, but instead pursuant to a statutory requirement that exists notwithstanding any litigation. Therefore, the records are not protected as work product and were not created to seek or provide legal advice, making them ineligible for attorney-client privilege. Additionally, the R.S. 2477 records created and maintained by the AGRC are records, not drafts, as defined by statute. Finally, the AGRC's request was not unreasonably duplicated, as it was directed to a new government entity. Accordingly, we reverse the district court's judgment and hold that SUWA must be given access to the records it seeks.

¶ 45 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.

---

**14.** The Division of Integrated Technology was created within the Department of Technology

Services, an executive branch agency. Utah Code Ann. § 63F–1–103.